No. 3--00--0670

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS,
 ) of the 12th Judicial Circuit

) Will County, Illinois

Plaintiff-Appellee, ) 

)

v. ) No. 99--CF--81
 

) 

DERRICK M. McGEE, ) Honorable

) Stephen White,

Defendant-Appellant. ) Judge Presiding

Modified Upon Denial of Rehearing

PRESIDING JUSTICE HOMER delivered the opinion of the court:

 

The defendant Derrick M. McGee was convicted by a jury of aggravated criminal sexual assault (720 ILCS 5/12--14(a)(2) (West 1998)), aggravated vehicular hijacking (720 ILCS 5/18--4(a)(3) (West 1998)), and aggravated battery (720 ILCS 5/12--4(a) (West 1998)).  Defendant was sentenced to a total of 32 years' imprisonment.  On appeal, the defendant argues that: (1) the State failed to prove that he was guilty of aggravated vehicular hijacking beyond a reasonable doubt, and (2) his consecutive sentences are unconstitutional as a violation of the due process clause of the fourteenth amendment.  

We reverse the defendant's aggravated vehicular hijacking conviction because the State failed to prove that the defendant took the victim's vehicle from her "immediate presence."  We affirm the defendant's convictions and consecutive sentences for aggravated criminal sexual assault and aggravated battery.

BACKGROUND

The defendant was indicted for criminal sexual assault, aggravated vehicular hijacking, and aggravated battery, after several individuals sexually assaulted a female victim.  During the assault, the victim was beaten and stunned with a stun gun.  Her assailants eventually fled the scene in her vehicle.

At trial, the victim testified first.  She indicated that in December 1998 she purchased cocaine from Demarcus Bailey.  She gave Bailey her grandmother's ring as collateral.  Subsequently, she paid Bailey and asked for the ring to be returned.  Bailey told her he lost it.  

In mid-January 1999, Bailey called the victim and told her that he found her ring and that she could come to his house to get it.  She did so.  When she arrived, there were three other individuals in the house.  Bailey told the victim that the ring was in the bedroom and that she could retrieve it.  She testified that as she was proceeding to the bedroom, someone behind her used a stun gun to stun her, which threw her to the ground.  She was stunned over 200 times.  Three of the individuals including Bailey forced her to have sexual intercourse.  Three of the attackers then fled in the victim's vehicle, leaving her behind with Bailey.

The victim escaped to a neighbor's house.  The neighbor helped the victim locate her car, which they found abandoned in a ditch.  

Investigator Paggi of the Will County sheriff's department interviewed the defendant the day after the attack on the victim.  The defendant was apprised of his 
Miranda
 rights, which he waived.  
At trial, the defendant chose not to testify.
  
However, the defendant had voluntarily submitted to a videotaped statement, which was submitted to the jury. 
 In the statement, the defendant told Paggi that he purchased the stun gun and had sexual intercourse with the victim.  He stated that he did not ejaculate in order to avoid leaving evidence because he knew that what he was doing was wrong.  The defendant informed Paggi that after the sexual assaults one of his co-assailants punched the victim in the face three times and took her car keys.  The assailants then attempted to drive to Joliet, but got stuck in a snow bank.  While abandoning the vehicle, they were approached by an individual the defendant knew as "Bam Bam," who accused them of assaulting the victim and demanded the keys to the victim's vehicle. 

The jury found the defendant guilty of aggravated criminal sexual assault, aggravated vehicular hijacking, and aggravated battery.  The defendant was sentenced to 24 years' imprisonment for aggravated criminal sexual assault,
 8 years for aggravated vehicular hijacking, and 5 years
 for aggravated battery.  The court ordered 
the 
sentences for aggravated vehicular hijacking and aggravated battery to be served concurrently to each other and consecutively to the sentence for aggravated criminal sexual assault.  The 
court denied the defendant's motion to reconsider sentence or in the alternative for a new trial.  The defendant appeals the denial of his motion.

ANALYSIS

1. Aggravated Vehicular Hijacking

A person commits aggravated vehicular hijacking when he, while armed with a dangerous weapon other than a firearm, takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force.  720 ILCS 5/18--3(a), 18--4(a)(3) (West 1998).  The defendant contends that the State failed to prove beyond a reasonable doubt that he committed the offense of aggravated vehicular hijacking because the evidence did not establish that the vehicle was taken from the "immediate presence" of the victim.

We note that although the defendant failed to raise the issue in the trial court, he has not waived this issue on appeal.  While it is well-settled that an issue not objected to at trial or contained in a posttrial motion is waived for purposes of appeal (
People v. Enoch
, 122 Ill. 2d 176, 190, 522 N.E.2d 1124 1131-32 (1988)), issues concerning the sufficiency of the evidence are recognized exceptions to the waiver rule (
People v. Lopez
, 242 Ill. App. 3d 160, 162, 610 N.E.2d 189, 191 (1993)).  Thus, we consider the substance of the defendant's claim of error.

Upon a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).  Here, the evidence established that the victim's vehicle was parked in the driveway when she was assaulted in Bailey's residence and her keys were taken.  Because these facts are not disputed, whether the vehicle was taken from the victim's immediate presence presents a question of law, which we review 
de
 
novo
.  
In re D.G.
, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991).  

Our analysis is guided by the factual circumstances and legal holding in 
People v. Cooksey
, 309 Ill. App. 3d 839, 723 N.E.2d 784 (1999).  In 
Cooksey
,
 the defendant jumped in front of the female victim as she walked out of a shopping mall exit carrying a bank deposit bag.  The victim, who was 25 feet away from her car, immediately dropped the bag and ran while yelling for help.  The defendant picked up the bag and ran after the victim.  When the defendant caught the victim, he stuck an object in her back and demanded her car keys.  She handed him the keys and ran back into the mall.  The defendant sped off in the victim's car.  On these facts, the appellate court reversed the defendant's vehicular hijacking conviction, holding that because the victim was not approaching her car or attempting to gain entry to her car at the time of the offense, the car was not taken from her "immediate presence."  
Cooksey
, 309 Ill. App. 3d at 848, 723 N.E.2d at 792.  

The State submits that 
Cooksey
 is wrongly decided and urges this court to not follow it.  However, we find the analysis of the 
Cooksey
 court to be both persuasive and consistent with the legislative intent of the hijacking statute.  

The offenses of vehicular hijacking and aggravated vehicular hijacking were enacted by the legislature in 1993.  See Pub. Act 88--351, §5, eff. August 13, 1993 (adding 720 ILCS 5/18--3, 18--4).  The legislation also amended the robbery statute to exclude motor vehicles covered by vehicular hijacking.  With the enactment of this legislation, "[a] person commits robbery when he or she takes property, except a motor vehicle covered by Section 18--3 or 18--4, from the person or presence of another by the use of force or by threatening the imminent use of force" (720 ILCS 5/18--1(a) (West 1994)), whereas, "[a] person commits vehicular hijacking when he or she takes a motor vehicle from the person or the 
immediate
 presence of another by the use of force or by threatening the imminent use of force" (emphasis added) 
(720 ILCS 5/18--3(a) (West 1994)).  

The legislature has not defined "presence" or "immediate presence" as these terms are used in the relevant statutes.  However, Illinois courts have broadly interpreted the term "presence" as it is used in the robbery statute, holding that it may be shown even though the property taken was not on the victim's person or within the victim's immediate control at the time of the occurrence.  See 
People v. Blake
, 144 Ill. 2d 314, 320-21, 579 N.E.2d 861, 864 (1991) (stating that property was in the presence of a victim even when the property was located on the first floor of a house while the victim was on the second floor).  
Cooksey
, on the other hand, appears to be the only reported case in Illinois construing the term "immediate presence" as it is used in the vehicular hijacking statute.  

The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature.  
People v. Frieberg
, 147 Ill. 2d 326, 345, 589 N.E. 2d 508, 517 (1992).  In determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved.  
Frieberg
, 147 Ill. 2d at 345, 589 N.E.2d at 517.  

A review of the legislative debate on Public Act 88--351 sheds light on the intended meaning of the phrase "immediate presence" as it is used in the vehicular hijacking statute.  The bill's sponsor, Senator Hawkinson, stated in floor debate that the purpose of the vehicular hijacking statute was to combat the tragedies:

"of car hijacking where someone armed or unarmed attacks 

a car, and either snatches the driver out ***[or] sometimes

these carjackings occur where a young child is a passenger

in the car and is taken for a ride and the mother or father is -- is yanked from the car."  88th
 Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 281 (statements of Senator Hawkinson).

Senator Hawkinson further explained:  

"[A]nd you could be, I suppose, repairing your car, or changing a tire, or at the gas pump and -- and filling it up and still this offense would still take place.  No, you couldn't be in the store away from the car at the time."  88th Ill. Gen. Assem.,  Senate Proceedings, April 15, 1993, at 283 (statements of Senator Hawkinson).

These statements by the bill's sponsor support the 
Cooksey
 court's conclusion that the intent of the legislature in enacting vehicular hijacking was to protect against the forceful taking of a car from a victim while the victim is in the immediate vicinity of the car.  See 
Cooksey
, 309 Ill. App. 3d at 848, 723 N.E.2d at 792. 

Moreover, we think it significant that the legislature added the adjective "immediate" as a modifier to the term "presence," distinguishing vehicular hijacking from robbery.  A court must give every word or phrase some reasonable meaning in interpreting a statute.  
People v. Bubolz
, 288 Ill. App. 3d 46, 46-47, 679 N.E.2d 854, 855 (1997).  

Based on the foregoing analysis, we conclude that "immediate presence," as the term applies to vehicular hijacking, means that the vehicle is within the immediate control of the alleged victim at the time of the occurrence.  Here, as in 
Cooksey
, the victim's keys were taken by force or threat of force when the victim's vehicle was located some distance from the occurrence.  While such conduct may constitute robbery or some other offense, it does not constitute the offense of vehicular hijacking.  In this instance, the victim's car was in the driveway outside the residence in which she was assaulted and her keys were taken.  This factual scenario is similar to one in which a car is taken in a mall parking lot some distance from the victim, or one in which a car is taken while the victim is in a store. 

Consequently, we hold that the vehicle was not taken from the immediate presence of the victim as required by the vehicular hijacking statute.  Under these circumstances, we conclude that the State failed to meet its burden of proof and that a rational trier of fact could not have found that the elements of aggravated vehicular hijacking were proven beyond a reasonable doubt. 

2. Consecutive Sentences

The trial court ordered the defendant's sentences for aggravated criminal sexual assault and aggravated battery to be served consecutively pursuant to section 5--8--4(a) of the Unified Code of Corrections (730 ILCS 5/5--8--4(a) (West 2000)).  The defendant contends that his consecutive sentence violates 
the United States Supreme Court decision of 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000). 

This same argument was recently addressed and rejected by our supreme court in 
People v. Carney
, 196 Ill. 2d 518, 752 N.E.2d 1137 (2001).  The trial court in this instance imposed sentences within the permissible statutory ranges for aggravated criminal sexual assault and aggravated battery.  Where the sentence for each separate offense does not exceed the maximum permitted by statute, 
Apprendi
 does not apply.  See 
Carney
, 196 Ill. 2d at 531-32, 752 N.E.2d at 1145.  The defendant's consecutive sentences of 24-years' imprisonment for aggravated criminal sexual assault and 5-years' imprisonment for aggravated battery are not unconstitutional. 

CONCLUSION

For the foregoing reasons, we reverse the defendant's conviction 
for aggravated vehicular hijacking and vacate the sentence for that offense.  The defendant's convictions and consecutive sentences for aggravated criminal sexual assault and aggravated battery are affirmed.

Affirmed in part, reversed and vacated in part.

LYTTON and McDADE, J.J., concur.