FOURTH DIVISION
MAY 22, 2008

Nos. 1-06-3753 and 1-07-0912 (Consolidated)

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 06 CR 12142, |
| | ) | 06 CR 12143 |
| | ) | |
| ABDUL ROBINSON, | ) | Honorable |
| | ) | John A. Wasilewski. |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Abdul Robinson was charged in two separate incidents occurring on May 9 and 13, 2006. Following a jury trial on all charges, defendant was found guilty of armed robbery and aggravated vehicular hijacking of Jamie Jenkins on May 9, and guilty of two counts of armed robbery and vehicular invasion involving Kelitha Nelson and Shamari Stewart on May 13. The trial court sentenced defendant to two concurrent 25-year terms in prison on the convictions for the May 9 armed robbery and aggravated vehicular hijacking, and to concurrent terms of 25 and 15 years on one count apiece of the May 13 armed robbery and vehicular invasion. Defendant now appeals.

The following facts were adduced at trial. Jenkins testified that just after midnight on May 9, 2006, she was walking near her home at 5353 S. Aberdeen Street in Chicago, when she noticed defendant walking across the street at the same pace as her. Jenkins testified that as she

turned to return to her house, defendant crossed the street toward her, grabbed her sweatshirt and said, "Bitch, what you got?" Jenkins testified that defendant was carrying a silver object that looked like a hammer. Jenkins testified that defendant then took a $5 bill from her pocket.

Jenkins tried to turn away from defendant, but he came up behind her and hit her in her head and back with the hammer, while trying to get her keys from her pocket. Jenkins also testified that defendant bit her stomach. According to Jenkins, her husband's cousin--whom she knew only as "Gary"--pulled defendant away from her. Jenkins headed for her mother-in-law's house, which was nearby, to telephone the police. En route, Jenkins saw the defendant backing her car from where it was parked into the street. Jenkins testified that at the time of the attack, she was three houses away from her car, which she had parked four hours earlier when she had come home from work.

Jenkins further testified that the police telephoned her on the evening of May 13 or 14, 2006, to inform her that they had recovered her car and to ask her to view a lineup. Jenkins identified defendant as the man she identified at the lineup.

Stewart, an E-3 Navy officer, testified on the afternoon of May 13, 2006, he and Nelson were driving his vehicle in the vicinity of 51st Street and Ashland, trying to sell approximately 25 pairs of expensive athletic shoes for extra money. Stewart testified that defendant approached them about buying a pair, but ultimately did not buy any. Later, after Stewart and Nelson relocated to the vicinity of 55th Street and Ashland, two girls looked at the shoes and took a business card with Stewart's cellular telephone number.

Soon thereafter, Stewart received a telephone call from the girls, stating that they wanted to buy some shoes and asking to meet them at the 6200 block of South Winchester Ave. Upon

reaching the corner of that block, one of the girls directed them into the alley, where one of the girls asked them to wait while they got the money.

Stewart testified that defendant appeared and reached inside the car, trying to remove the keys. Stewart attempted to drive away, but a struggle ensued, during which defendant punched Stewart and struck him with a pipe. Defendant struck Stewart four times, including below the eye, the top of his head, the right side of his forehead and above an ear. According to Stewart, defendant ordered that they give him the shoes, whereupon Nelson gave defendant shoes from the back of the car, while defendant removed shoes from the trunk. Stewart testified that he saw defendant putting the shoes in a garage. Stewart testified that defendant told them to leave or he would kill them, whereupon they drove away. The pair drove to Nelson's house, where Nelson's mother phoned the police.

Nelson testified that after Stewart was taken to the hospital, she returned to the crime scene with Chicago police officer Haytham Mohammad and his partner, Officer Romanowski. Nelson identified defendant at the scene, wearing a brand new pair of shows that appeared to be one of the pairs stolen.

Officer Mohammad testified that defendant was exiting a black Pontiac when he, his partner and Nelson arrived at the crime scene. Officer Mohammad testified that defendant attempted to flee when approached, but was ultimately apprehended. Officer Mohammad also ran the license plates on the Pontiac and discovered the car was owned by Jenkins. Officer Mohammad testified that he did not recover anything from the Pontiac. Officer Romanowski testified that a metal pipe was recovered from the driver's side of Stewart's car. The police also found empty shoe boxes in the alley.

3

At the close of the State's case, defendant moved for a directed finding. The trial court denied the motion. Defendant presented no witnesses. Following closing argument and jury deliberations, the jury found defendant guilty of armed robbery and aggravated vehicular hijacking of Jamie Jenkins on May 9, and guilty of two counts of armed robbery and vehicular invasion involving Kelitha Nelson and Shamari Stewart on May 13. The trial court sentenced defendant to two concurrent 25-year terms in prison on the convictions for the May 9 armed robbery and aggravated vehicular hijacking, and to concurrent terms of 25 and 15 years on one count apiece of the May 13 armed robbery and vehicular invasion. The trial court further found that defendant must serve 85% of the latter sentences because he inflicted great bodily harm on Stewart.

I

On appeal, defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated vehicular hijacking and vehicular hijacking because there was no evidence that Jenkins was in the "immediate presence" of her car at the time it was forcibly taken from her. In considering a respondent's challenge to the sufficiency of the evidence, the relevant question is whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the respondent guilty beyond a reasonable doubt. People v. Tenney, 205 Ill. 2d 411, 427 (2002). However, where the facts are not in dispute, a defendant's guilt is a question of law, which is reviewed de novo. People v. Smith, 191 Ill. 2d 408, 411 (2000). "A person commits vehicular hijacking when he or she takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3(a) (West 2004).

4

Defendant relies primarily on two cases that discuss the meaning of "immediate presence" as used in the vehicular hijacking statute: People v. Cooksey, 309 Ill. App. 3d 839 (1999), and People v. McGee, 326 Ill. App. 3d 165 (2001). In Cooksey, as the victim left a mall entrance, preparing to make a bank deposit, she was jumped by the defendant. Cooksey, 309 Ill. App. 3d at 842. She dropped the deposit bag and ran for help. The defendant caught up with her, stuck "something" in her back, and demanded her car keys. The victim gave her keys to the defendant and then ran into the mall. A short time later she returned to the parking lot and her car was gone. Cooksey, 309 Ill. App. 3d at 842. The defendant was convicted of vehicular hijacking and argued on appeal that the State failed to prove him guilty of that offense, specifically, that the victim was in the "immediate presence" of the vehicle when it was taken. Cooksey, 309 Ill. App. 3d at 846. Noting that the case was one of first impression since no Illinois case had interpreted the term "immediate presence," the Cooksey court first looked to the legislative debates, finding they made it clear that the driver or passenger must be in the "immediate vicinity of the car" at the time it is taken to constitute "immediate presence." Cooksey, 309 Ill. App. 3d at 848. The Cooksey court concluded that the State failed to prove the defendant guilty of vehicular hijacking because the undisputed evidence showed that at no time did the victim approach her car, she was 25 feet away from it when the defendant first jumped her, and, when she ran, she fled away from the car, not toward it. Cooksey, 309 Ill. App. 3d at 848.

In McGee, the defendant was convicted of aggravated vehicular hijacking and maintained on appeal that the State failed to prove him guilty beyond a reasonable doubt because it failed to prove he took the victim's car from her "immediate presence." McGee, 326 Ill. App. 3d at 166. The evidence showed that the victim was attacked inside a home, at which time her attackers

5

took her car keys.  McGee, 326 Ill. App. 3d at 167.  They then fled from the home in her car,

leaving her behind in the house.  McGee, 326 Ill. App. 3d at 167.  The McGee court ruled that

"immediate presence" meant that the "vehicle is within the immediate control of the alleged

victim at the time of the occurrence."  McGee, 326 Ill. App. 3d at 170.  The McGee court

reasoned:

> "Here, as in Cooksey, the victim's keys were taken by force or
>
> threat of force when the victim's vehicle was located some distance
>
> from the occurrence.  While such conduct may constitute robbery
>
> or some other offense, it does not constitute the offense of
>
> vehicular hijacking.  In this instance, the victim's car was in the
>
> driveway outside the residence in which she was assaulted and her
>
> keys were taken.  This factual scenario is similar to one in which a
>
> car is taken in a mall parking lot some distance from the victim, or
>
> one in which a car is taken while the victim is in a store."  McGee,
>
> 326 Ill. App. 3d at 170.

Accordingly, this court held that the State failed to prove the defendant guilty of aggravated

vehicular hijacking because the victim's keys were taken from her by force when her vehicle was

located some distance from that occurrence.  McGee, 326 Ill. App. 3d at 170.

In contrast, the State relies on In re Ricardo A., 356 Ill. App. 3d 980 (2005).  In that case,

Jimmy Fernandez testified that he was driving his father's care when he was waved into a

driveway by one of the minor respondents.  Fernandez had exited the car and had his car keys

with him when he was beaten by six people.  Ricardo A., 356 Ill. App. 3d at 983.  As the

attackers started to disburse, he was walking away when he heard his car start and then saw it drive past him, whereupon he had words with the driver. Fernandez testified that he was 20 to 25 feet away from the car when it started, 5 to 10 feet away as the car was taken, and ultimately about a foot away as it drove past him. Ricardo A., 356 Ill. App. 3d at 984.

The Ricardo A. court stated:

"Neither Cooksey nor McGee is instructive in the instant case. Cooksey is distinguishable because it is clear the victim there was never less than 25 feet from her car, whereas here, the evidence showed that Fernandez was 5 to 10 feet away and even 1 foot away. McGee is also distinguishable since the victim was inside a house and nowhere near her car when it was taken. Moreover, neither case defines 'immediate,' nor gives guidance in that regard. 'Immediate' means 'being near at hand: not far apart or distant.' Webster's Third New International Dictionary 1129 (1993).

While it is true Fernandez testified that he walked away from the car after he was beaten, he also testified that he turned around thereafter. Although respondents rely on Fernandez's testimony that he was 20 to 25 feet away when the car started, there are problems with this testimony. First, where respondent's counsel obtained the distance of 20 feet is not evident from the record. Nowhere prior to this time was there any testimony from

Fernandez in connection with a distance of 20 feet. Second, in stating the distance for the record, the distance of 20 to 25 feet was respondent's attorney's estimation, not words out of Fernandez's mouth. In any event, despite this testimony, Fernandez positively stated on direct examination that he was within 5 to 10 feet of the car when it was taken from him. Additionally, as he was talking to Ricardo through the window, Fernandez stated he was within one foot of the car when Ricardo drove by. We find that this distance is not far apart or distant and fulfills the definition of 'being near or at hand,' particularly since Fernandez stated he could have touched the car. Obviously, this is at hand. Reviewing the evidence in the light most favorable to the State, we find that the evidence was sufficient for a rational trier of fact to find respondents guilty beyond a reasonable doubt on the charges of aggravated vehicular hijacking and vehicular hijacking." Ricardo A., 356 Ill. App. 3d at 991-92.

In this case, the only testimony regarding "immediate presence" is the testimony from Jenkins that at the time of the attack, she was three houses away from her car. There does not appear to be any evidence as to how close or distant Jenkins was when the car was taken. There appears to be no evidence that Jenkins was in "immediate vicinity of the car" as the Cooksey court would require, or that the vehicle was "within the immediate control of the victim at the time of the occurrence," as the McGee court would require. Nor does there appear that the car

was "near or at hand" to Jenkins under <u>Ricardo A.</u>, as the court there focused on a distance of under 20 feet.

In short, the State failed to prove defendant guilty beyond a reasonable doubt of aggravated vehicular hijacking as to the Jenkins incident. Defendant's conviction on this charge is reversed and the accompanying sentence is vacated. Defendant raises no issue as to the sufficiency of the evidence to support the remaining convictions.

II

Defendant next contends that the trial judge erred in imposing truth-in-sentencing on the defendant's sentence for armed robbery because the victim suffered great bodily harm. On appeal, the defendant argues that the truth-in-sentencing provision of section 3-6-3(a)(2)(iii) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(2)(iii) (West 2004)) violates his due process and jury trial rights under <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), which holds that (except for a prior conviction) any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt.

This court has repeatedly rejected this argument, as the statute does not change the prescribed maximum penalty of the underlying offense. <u>People v. Bell</u>, 327 Ill. App. 3d 238, 241-42 (2002); <u>People v. Newbolds</u>, 325 Ill. App. 3d 192, 195-96 (2001); <u>People v. Garry</u>, 323 Ill. App. 3d 292, 299 (2001). Nevertheless, defendant contends this court should not follow these precedents in light of the United States Supreme Court opinions in <u>Cunningham v. California</u>, 549 U.S. ____, ____, 166 L. Ed. 2d 856, 868-69, 127 S. Ct. 856, 863-64 (2007), and <u>Blakely v. Washington</u>, 542 U.S. 296, 304-05, 159 L. Ed. 2d 403, 414, 124 S. Ct. 2531, 2537-38 (2004).

However, the sentencing statutes in those cases involved judicial fact-finding as to the sentence *imposed*. In contrast, our truth-in-sentencing law may well affect the sentence defendant ultimately serves, but it does not affect the sentence imposed; moreover, given that it concerns good-conduct credit, its application is not definite, immediate, or automatic. See People v. Frison, 365 Ill. App. 3d 932, 934 (2006). Accordingly, defendant's argument is unpersuasive.

### III

Finally, defendant contends that the trial court abused its discretion in all of its sentencing by inadequately considering mitigating factors and his potential for rehabilitation. Generally, sentencing decisions are a matter entirely within the discretion of the circuit court which reviewing courts will not disturb absent an abuse of that discretion. People v. Rogers, 197 Ill. 2d 216, 223 (2001).

In this case, the sentences imposed were within the statutory limits. When mitigating evidence is before the court, it is presumed that the judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. People v. Canet, 218 Ill. App. 3d 855, 864 (1991). In this case, the trial court specifically stated that it considered the mitigating factors, including those not mentioned by statute, but raised by defense counsel at the sentencing hearing. However, given our decision to reverse defendant's conviction and vacate his sentence for aggravated vehicular hijacking, this court considers whether remandment is required for resentencing on the remaining convictions. There is some case law suggesting that where it cannot be determined with certainty that the vacated counts did not influence the judge's sentencing decision, resentencing is required. See People v. Guajardo, 262 Ill. App. 3d 747, 772-73 (1994). On the other hand, where the trial court simply considered the acts of violence

involved, as opposed to the fact of a conviction, no remand is required. See <u>People v. Aleman</u>, 355 Ill. App. 3d 619, 627-28 (2005). In this case, the transcript shows that the trial court focused on the violence of the underlying acts and did not refer to the conviction for aggravated vehicular hijacking. Accordingly, this court need not remand the case to the circuit court for resentencing.

For all of the aforementioned reasons, defendant's conviction for aggravated vehicular hijacking is reversed and the sentence for that offense is vacated. Defendant's remaining convictions and sentences stand.

Reversed and vacated in part; affirmed in part.

NEVILLE, P.J., and O'BRIEN, J., concur.