2020 IL App (1st) 172096
No. 1-17-2096
Order filed January 27, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 15402 |
| STANLEY JONES, | ) ) ) | The Honorable |
| Defendant-Appellant. | ) ) | Neera Lall Walsh, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Griffin and Justice Walker concurred in the judgment and opinion.

**ORDER**

¶ 1     *Held*:  The State produced enough evidence to support defendant's attempted aggravated robbery conviction; defendant's argument that he should have been charged with vehicular hijacking fails as a matter of law and under the facts.

¶ 2     An apparent "road rage" incident ended with Stanley Jones' arrest for attempting to rob Jonathan Casaccio in a parking lot. After a bench trial, the judge convicted Jones of attempted aggravated robbery with a firearm and sentenced him to six and one-half years imprisonment.

¶ 3 Jones seeks outright reversal, arguing (i) the State did not present sufficient evidence to prove he used a weapon when demanding Casaccio's car keys, and (ii) at most, he was guilty of violating the vehicular hijacking statute by attempting to take Casaccio's car.

¶ 4 We affirm. A surveillance video from the parking lot showed that the entire attempt robbery lasted about three minutes and corroborated the testimony of two witnesses. Both witnesses testified that the entire time Jones argued with Casaccio, Jones had a heavy object in his pocket and continually demanded Casaccio's car keys. Both witnesses assumed that the object was a gun. Minor inconsistencies in the evidence did not negate the reasonable inference that Jones took a substantial step toward aggravated robbery, as defined by statute. We find a rational trier of fact could find Jones guilty beyond a reasonable doubt.

¶ 5 Next, Jones argues the robbery statute specifically excludes a motor vehicle from the definition of "property," and, at most, he attempted to take Casaccio's car in violation of the vehicular hijacking statute. Under that statute, the State must prove the defendant took the victim's car from the victim's person or immediate presence (Jones was never charged with vehicular hijacking). His argument fails because the State proved that while armed with what the victim thought was a gun, Jones attempted to rob him.

¶ 6 Background

¶ 7 Casaccio worked at his father's grocery store near the intersection of Madison Street and Central Avenue, Chicago. About 9:00 a.m. on September 8, 2015, Casaccio was driving to work on the Eisenhower Expressway in a black Audi sedan. Casaccio testified that he noticed a maroon Lincoln tailing him in his rear-view mirror. The Lincoln was inches away from Casaccio's car. The Lincoln pulled alongside on Casaccio's side. Both cars had their windows down and Casaccio could see Jones driving alone. Jones was screaming loudly at him. Casaccio realized Jones wanted

him to pull over so Casaccio pretended to exit at Harlem, but instead continued driving to the Central exit. When Casaccio stopped behind another car at a red light, Jones blocked Casaccio's car from behind, got out, and approached Casaccio on the passenger side. Jones began punching the windows and trying to open the door, which Casaccio had locked. When the light changed, Casaccio drove off. He then heard a loud bang and saw that his rear window was broken. Jones was standing directly behind his car.

¶ 8        Casaccio stopped at Madison and Central for a red light. Jones pulled up, again got out, and began banging with his fist on Casaccio's driver's side window. Casaccio turned the corner and pulled into the parking lot of the grocery store where he worked. There, Casaccio met Lonnie Reaves, the store manager, whom he had called when he was a few minutes away from the store. Casaccio called the police. He and Reaves were standing in the receiving area looking outside, when they saw Jones walking toward them from the barber shop across the parking lot. Jones's right hand was in his sweatpants pocket. A heavy bulge appeared in his pocket, weighing down his pants, and he was "fidgeting the whole time with his right hand." When asked why he described the bulge as "heavy," Casaccio said, "Because when he wasn't holding it, it was obviously, weight hanging from it; and he was–-his whole tone, and his whole attitude when he was talking to us, was directed with using his right hand."

¶ 9        Jones went up to Casaccio's car and tried to open the door; it was locked. Jones approached Casaccio, demanding his keys. Casaccio refused. Jones pulled his right hand out of his pocket and punched Casaccio in the face. Reaves tried to separate them.

¶ 10        Jones and Casaccio continued to argue, with Jones telling Casaccio he wanted to take the fight into the alley. Jones took off his sweatshirt and draped it over his shoulder, then took something out of his right pocket and "aimed" at Casaccio. Jones stood as though he was going to

shoot a gun, but Casaccio never saw a gun. Jones had his right hand in his right pocket most of the time, except when he punched Casaccio.

¶ 11       Jones ran out of the parking lot before the police arrived. Two days later, a detective returned to the store with a photo array of six men. Casaccio picked out Jones.

¶ 12       The court viewed a video from the parking lot camera showing Jones walking in the parking lot with his right hand in his pocket, approaching Casaccio's car on the driver's side, and trying to open the car door. Reaves and Casaccio immediately walk up and Jones and Casaccio begin arguing and gesturing. Jones takes his hand out of his pocket and hits Casaccio in the face. Casaccio reacts and moves toward Jones, with Reaves beside them. The three men then quickly move out of camera view. After several seconds, they appear but farther away. Jones takes his sweatshirt off while facing Casaccio and Reaves, who continue to move away from the camera. Jones too is backing away, but twice he comes toward the two men with his jacket over his arm. Reaves appears to be intervening, then for several seconds all the men are out of view. Suddenly Casaccio is visible, running back toward the store with his phone. He said he was calling the police and his father. Jones runs in the other direction. The entire video is 4 minutes, 10 seconds. Jones appears about 10 seconds after the video begins and leaves the parking lot about three minutes later.

¶ 13       Lonnie Reaves testified that he had known Casaccio, one of the owner's sons, for about 15 years. That morning about 10 a.m., Reaves received a phone call from Casaccio, who was talking fast. Reaves went outside the store and waited in the parking lot of a laundromat next to the grocery. He saw Casaccio's car turn off Central onto Madison, then speed down the street and pull through the gate into the grocery parking lot. A maroon Lincoln was following him. Casaccio parked near the receiving entrance and got out of his car. The Lincoln parked on the street. Reaves

saw a person get out of the Lincoln and walk into the parking lot, turn around, and go into the barber shop nearby. Ten minutes later the same person came out of the barber shop wearing a black sweater and gray sweatpants. Reaves identified the person as Jones.

¶ 14      Jones walked up to Casaccio's car and grabbed the driver's door handle. It was locked. Reaves and Casaccio approached Jones, and Casaccio and Jones began arguing. Jones continually demanded Casaccio's keys. At this point, Jones had his right hand in his pants pocket. Then, Jones punched Casaccio's face with his right hand in a fist. Jones started to back away from Casaccio and put his right hand back in his pocket. Reaves tried to get between them, but Jones and Casaccio kept arguing. Jones wanted to go into the alley and fight. Jones took his sweater off and put it over his shoulder. Jones kept demanding Casaccio's keys and Reaves described Jones as "confrontational." Reaves looked away to tell the other employees, who were now watching, to call the police; when he looked back Jones was in a "stance" with his left arm up and his right hand underneath his left arm. The jacket was over his right arm. Reaves never saw a gun. Reaves pushed Jones up against a truck and pointed out all the cameras in the parking lot. Jones ran away.

¶ 15      Two days later, Reaves identified Jones in a photo array of six photographs supplied by a police detective.

¶ 16      Chicago Police Detective Michael Lynch testified that he investigated the incident. After speaking to Casaccio by phone, Lynch compiled a six-photo array that included Jones. Casaccio and Reaves identified Jones as the assailant.

¶ 17      Jones was arrested on September 12, 2015. Lynch interviewed Jones while he was in custody. After waiving his Miranda rights, Jones told Lynch that while driving on the Eisenhower, he may have cut off a "kid" with tinted windows who rolled down his windows and yelled at him to get off. They got off the expressway at Central Avenue, got out of their cars, and the "kid"

pulled out a silver handgun. Jones threw a bottle at the car that broke the rear window because he was mad about the gun. Jones said he got back in the car and followed the "kid" to the grocery parking lot. Jones denied trying to rob anyone or having a gun.

¶ 18    Lynch admitted that at the preliminary hearing, he testified Casaccio said he pulled a gun first when they were on Central Avenue, but Lynch stated he misunderstood the question at the preliminary hearing, and his testimony was a mistake. Lynch testified Casaccio never said he had a gun or pointed a gun at Jones. Lynch said that he mixed up the names and he was nervous. Lynch had been a police officer for 25 years.

¶ 19    At the close of the State's case, the trial court admitted into evidence the photo arrays, Casaccio's and Reaves' signed advisory forms, and the surveillance video (People's Exhibits 1 through 5).

¶ 20    The only defense witness was Jones. Jones testified that while driving eastbound on the Eisenhower, the traffic began to slow down, so he decided to exit at Des Plaines Avenue. Without using his turn signal, Jones cut off Casaccio, whose car "tapped the back of my vehicle," chipping the paint a little. They found themselves driving side-by-side and began arguing. Jones got off at Central and turned north to go to his sister's house at 1657 North Mayfield, Chicago. Jones was in front of Casaccio. At Central and Adams, Jones looked in his rear-view mirror and saw the black Audi behind him. Jones pulled over and got out of his car. Casaccio got out of his car and stood behind his car door. Casaccio took out a gun and "just pointed," then drove away. As Casaccio's car passed him, Jones threw a glass juice bottle and broke the rear window. Jones followed Casaccio. When they arrived at the grocery parking lot, Jones and Casaccio argued about why Casaccio pulled out a gun. Jones hit Casaccio with his fist. Reaves then threw Jones up against a

truck and told him there were cameras. Jones denied having a gun, threatening Casaccio, or trying to take anything from Casaccio.

¶ 21    On cross-examination, Jones testified he was working temporary service jobs but went to his sister's house on Mayfield almost every day to apply for jobs online. At the time, Jones thought Casaccio was following him, but he later learned that Casaccio worked at the grocery and it was a coincidence that they were going in the same direction.

¶ 22    Jones went up to the Audi and pulled on the car doors because the windows were tinted, and he couldn't see if anyone was inside. Jones wanted to confront Casaccio even though he had just pulled out a gun. Jones was "acting out of anger," ready to fight.

¶ 23    After Jones testified, the State introduced certified copies of four convictions.

¶ 24    The trial court found Casaccio credible, and Reaves' testimony corroborated Casaccio. The trial court observed that Jones was the aggressor when he went to the grocery and approached Casaccio. It was not logical that Jones would throw a bottle at Casaccio's car after Casaccio pulled a gun on him; nor was it logical that Jones would pursue Casaccio if he believed Casaccio had a gun. The trial court viewed Jones's testimony as "fantastical" because Jones said he was on his way to his sister's house on "Maypole" (not "Mayfield" as Jones stated), and that was the wrong way.

¶ 25    Also significant, Reaves corroborated Casaccio's testimony that Jones seemed to have something heavy in his pocket and Jones kept his right hand in his pocket the entire time, except when he punched Casaccio. The trial court commented that Reaves "seems to have the coolest head here."

¶ 26     The trial court also found Lynch's testimony credible. The mistaken testimony about Casaccio saying he had a gun was a minor inconsistency in the State's case which did not outweigh the State's evidence of proof of the elements of the charge beyond a reasonable doubt.

¶ 27     Because of his convictions, Jones was eligible for an extended term of incarceration. The trial court sentenced him to six and one-half years in prison.

¶ 28                                    Analysis

¶ 29     Jones contends he was not proved guilty beyond a reasonable doubt. Jones argues (i) the alleged threat of force was unrelated to the alleged demand for Casaccio's car keys; (ii) the trial court relied on improper information in discounting exculpatory testimony; and (iii) the aggravated robbery statute excludes the offense of attempting to take a car by force.

¶ 30                          *Sufficiency of the Evidence*

¶ 31     Reviewing courts do not retry cases. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Reviewing courts consider all the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *People v. Brown*, 2013 IL 114196, ¶ 48. The trier of fact has the responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Where evidence presents conflicting inferences, proper resolution best belongs to the trier of fact. *People v. Campbell*, 146 Ill. 2d 363, 375, 380 (1992). On review, this court allows all reasonable inferences from the record in favor of the prosecution. *People v. Bush,* 214 Ill. 2d 318, 326 (2005).

¶ 32     In a bench trial, the trial judge presumably considers only competent evidence in reaching its verdict. *People v. Gilbert,* 68 Ill. 2d 252, 258 (1977). This presumption may be rebutted by

affirmative evidence in the record. *Id.* at 259. The court determines the weight of the evidence and the credibility of the witnesses, resolves conflicts and inconsistencies in the testimony, and draws reasonable inferences. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 52. The fact finder need not accept a defendant's version of events. *Milka*, 211 Ill. 2d at 178.

¶ 33        Aggravated robbery involves taking property either by force or threatening the imminent use of force "while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon," even if it is later determined that he or she had no firearm or other dangerous weapon. 720 ILCS 5/18-1(b)(1) (West 2014). The attempt statute requires a "substantial step" toward the commission of a specific offense with intent to commit that offense. 720 ILCS 5/8-4(a) (West 2014).

¶ 34        Jones claims the evidence is in "equipoise"—a state of equal balance. Three occurrence witnesses testified, including the two main actors in the altercation, Casaccio and Jones. Much of their testimony was consistent as far as driving on the expressway, making their way to the grocery store, and arguing in the parking lot. Casaccio and Jones disagreed, however, as to who was the pursuer in the traffic chase. Casaccio stated Jones tailgated him and yelled at him to pull over, apparently for no reason. Jones stated he cut off Casaccio in heavy traffic, Casaccio "tapped" his car, and an argument ensued. Jones did not call 911 at this point. When they exited the expressway at Central Avenue, their testimony differs as to which one was in the lead and which one had a gun. Casaccio said his car was first, and when they stopped at a stop sign, Jones approached and tried to break the window by pounding with his fist. According to Jones, he was driving in front of Casaccio and when they stopped, Casaccio got out of his car and pulled a gun. As Casaccio's car passed him, Jones threw a glass juice bottle and broke Casaccio's rear window. Jones then followed Casaccio. Jones did not call 911 then either.

¶ 35    Jones argues the State's evidence showed that Jones indicated he had a weapon *after* he demanded Casaccio's car keys which was only part of the ongoing argument, not an attempt to take his property. His argument ignores Reaves' testimony that Jones had a heavy object in his pocket and demanded the car keys throughout the exchange between Casaccio and Jones. Reaves is not involved until Casaccio arrives at the grocery store. His testimony corroborated Casaccio's regarding events from that point on.

¶ 36    Jones asserts the trial court made erroneous findings and considered facts not in evidence when it rejected Jones' version of events. Jones claims his testimony was consistent with objective evidence, that is, the surveillance footage. The video, which has no sound, captures the movements and body language of all three main actors—Jones, Casaccio, and Reaves. At times a delivery truck obscures their movements, but the gaps last a few seconds and most of the salient acts appear on tape. The entire incident lasts three minutes, from Jones' first appearance on camera as he entered the parking lot through the back gate to when he leaves the parking lot.

¶ 37    The video shows the entire incident lasted about three minutes. When Casaccio parked in the grocery parking lot, his car's rear window had a large hole. Casaccio gets out of his car with his cell phone. Jones is walking across the parking lot towards Casaccio's car with his right hand in his right pants pocket. As Jones stands next to the driver's door, Casaccio and Reaves enter the camera range just a few feet away. Their presence contradicts Jones's testimony that he went up to Casaccio's car because he couldn't see whether anyone was inside. Casaccio gestures with both arms extended, looking at the rear of his car with the broken window. The three men move away from the car; Jones still with his right hand in his pocket. Arguing, Jones circles around Reaves, pulls his right hand out of his pocket and punches Casaccio's face. Casaccio lunges toward Jones who backs up. All three men move farther away but can be seen arguing and gesturing. At two

different occasions, for a few seconds, a large truck blocks the view. After backing away and returning twice, Jones ultimately approaches with the jacket over his arm. Seconds later, Casaccio is seen running back toward the store, and Jones is running in the opposite direction toward the gate. Reaves emerges from behind the truck and walks quickly toward the store.

¶ 38    With the gap in the video (caused by a parked truck in the frame of view), we are left with the testimony that Casaccio and Reaves believed Jones had a gun when he turned around and assumed a "stance." Casaccio saw Jones take "an object" out of his pocket, and later stated he saw "part of a gun" in Jones's hand. Reaves never saw a gun in Jones's hand, but Jones's hand was covered with his sweater. Reaves demonstrated the "stance" by holding up both hands with his right hand as if he had a gun and his left hand over his right. When the three men re-appear from behind the truck, Casaccio and Reaves are running toward the store and Jones is running in the opposite direction. Jones's argument that the evidence was insufficient to prove he used a weapon when demanding Casaccio's car keys fails.

¶ 39    The trial court found Jones' testimony that he continued to pursue Casaccio after Casaccio threatened him with a gun as not logical. We note the trial court's comments on the "minor" inconsistencies in the State's case as not outweighing the proof of the elements of the crime beyond a reasonable doubt.

¶ 40                                      Vehicular Hijacking

¶ 41    Assuming this court finds insufficient evidence to prove attempted aggravated armed robbery, Jones argues the substantive offense the State could prove meets the definition of vehicular hijacking, which is expressly excluded from the aggravated robbery statute. The State asserts the only reasonable inference is that Jones's demand for Casaccio's car keys was designed to prevent Casaccio from escaping.

¶ 42      While we need not reach this argument, Jones would not prevail were we to reverse his conviction. We are guided by *People v Cooksey*, 309 Ill. App. 3d 839 (1999). The victim was walking out of a shopping mall carrying a bank deposit bag and was 25 feet away from her car when the defendant suddenly jumped in front of the victim and demanded her car keys. After she turned over the keys, she ran into the shopping mall. The defendant sped off in her car. The appellate court found the evidence did not support a finding that defendant took the car from the victim's person or immediate presence as the statute requires to support a conviction for vehicular hijacking. It was significant that at no time did the victim approach her car, nor was she attempting to get into her car, when the defendant took her keys. *Cooksey* went on to analyze the defendant's conviction for robbery and concluded that the jury verdict was not so improbable as to leave a reasonable doubt about the defendant's guilt. *Id*. at 850. Cooksey's conviction for robbery was affirmed at the same time his conviction for vehicular hijacking was reversed.

¶ 43      The third district followed *Cooksey* in *People v. McGee*, 326 Ill. App. 3d 165 (2001), where the defendant challenged the sufficiency of the evidence. The victim's car was parked in the driveway when she was assaulted inside the house and her keys were taken. *Id*. at 168, 170. So, the victim was not in the immediate control of her car when it was stolen. *Id.* The court found the defendant was incorrectly charged with aggravated vehicular hijacking. *Id.* at 170-71.

¶ 44      Footage of the parking lot corroborated Casaccio and Reaves's testimony that Casaccio was not in or even near his car during the argument. Only Jones approached Casaccio's car; the closest Casaccio came was to stand behind it gesturing at the broken rear window. A charge of vehicular hijacking would have been inappropriate.

¶ 45      Affirmed.