STATE of Tennessee

v.

Henry A. EDMONDSON, Jr.

Supreme Court of Tennessee,
at Nashville.

April 27, 2007 Session Heard
at Clarksville.[1]

Aug. 20, 2007.

---

1. Oral argument was heard in this case in Clarksville, Montgomery County, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

Jeffrey A. DeVasher, Assistant Public Defender (on appeal); and Jennifer Hall and Jonathan F. Wing, Assistant Public Defenders (at trial), Nashville, Tennessee, for the appellant, Henry A. Edmondson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks and C. Daniel Lins, Assistant Attorneys General; and Kathy Morante and Harold Donnelly, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., and FRANK F. DROWOTA, III, Sp.J., joined.

We granted the Defendant Henry A. Edmondson, Jr.'s request for permission to appeal to address an issue of first impression regarding the meaning of the word "possession" as it is used in the carjacking statute. The Defendant accosted the victim in a retail parking lot when she was several yards away from her parked car. He demanded her keys and then drove away in her car. The Defendant contends that the victim was too far away from her vehicle to be in "possession" of it as required by the carjacking statute, Tennessee Code Annotated section 39–13–404 (2006). We hold that the victim was in possession of her motor vehicle and that the Defendant's conviction of carjacking is supported by sufficient evidence.

Accordingly, we affirm the judgment of the Court of Criminal Appeals.

## FACTS AND PROCEDURAL HISTORY

Ruth Weatherford testified that she drove her Mazda automobile to a drugstore in South Nashville on May 19, 2004, at about seven p.m. She had her dog with her in the car. She parked in front of the store at the sidewalk and got out of her car. As she was walking along the sidewalk toward the store, a man approached her and said, "Give me your money and your keys." Ms. Weatherford stated that she was "[a]bout three cars" in distance from her car when she was accosted by the man. She did not see a gun and the man did not threaten her with one. Ms. Weatherford explained that she nevertheless had been "scared ... [r]eally, really bad."

Ms. Weatherford threw her keys and a ten dollar bill she was carrying in her hand onto the ground. As the man bent over to retrieve these items, she ran into the parking lot. She screamed at a woman driving another car to call the police. As she was seeking help from the woman in the parking lot, Ms. Weatherford saw her assailant driving away in her car. She told the woman to "[w]atch and see which way he goes" and then entered the drugstore.

Metro Nashville police officer Brandon Dozier arrived a short time later and obtained from Ms. Weatherford a description of her car. The description was broadcast, and Officer MacKovis Peebles, III, soon spotted a car matching the description. He stopped the car and took the driver into custody. Officer Dozier drove Ms. Weatherford to Officer Peebles' location where Ms. Weatherford viewed the man and identified him as the person who had accosted her at the drugstore. Ms.

Weatherford again identified the Defendant at trial.

The jury convicted the Defendant of one count of carjacking, a Class B felony. Tenn.Code Ann. § 39–13–404(b) (2006). The trial court sentenced the Defendant as a multiple offender to twenty years in the Department of Correction. The Defendant appealed, asserting that the evidence is not sufficient to support his conviction.[2] The Court of Criminal Appeals affirmed the Defendant's conviction and sentence. We hold that the victim was in possession of her motor vehicle at the time the Defendant accosted her and therefore affirm the judgment of the Court of Criminal Appeals.

### STANDARD OF REVIEW

Because this case concerns our construction of a statute, our review is de novo with no presumption of correctness given to the lower courts' conclusions. *State v. Denton*, 149 S.W.3d 1, 17 (Tenn.2004).

### ANALYSIS

#### I. Canons of Statutory Construction

■ "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides [sic] to that end." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn.1998). "In ascertaining the intent of the legislature, this Court may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *State v. Collins*, 166

S.W.3d 721, 726 (Tenn.2005) (internal quotation marks and citation omitted). We are entitled to presume that our General Assembly is knowledgeable about its prior enactments and knows the state of the law at the time it passes the legislation under construction. *Hicks v. State*, 945 S.W.2d 706, 707 (Tenn.1997); *Wilson v. Johnson County*, 879 S.W.2d 807, 810 (Tenn.1994).

■ We are to construe "in pari materia" those statutes relating to the same subject or having a common purpose. *Collins*, 166 S.W.3d at 726. And, " 'where the legislature includes particular language in one section of the statute but omits it in another section of the same act, it is presumed that the legislature acted purposefully in including or excluding that particular subject.' " *State v. Hawk*, 170 S.W.3d 547, 551 (Tenn.2005) (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn.2000)). Additionally, we must construe the provisions of our criminal code "according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn.Code Ann. § 39–11–104 (2006).

#### II. Carjacking Statute: "Possession"

■ Tennessee Code Annotated section 39–13–404 defines the offense of carjacking as "the intentional or knowing taking of a motor vehicle *from the possession of another* by use of: (1) A deadly weapon; or (2) [f]orce or intimidation." Tenn.Code Ann. § 39–13–404(a) (2006) (emphasis added). In this case, it is undisputed that the

---

**2.** Originally the Defendant conceded that the evidence is sufficient to support a conviction of robbery on the theory that robbery is a lesser-included offense of carjacking. After the Defendant filed his brief, however, this Court determined that robbery is not a lesser-included offense of carjacking. *See State v.*

*Wilson,* 211 S.W.3d 714, 722 (Tenn.2007). In any event, we need not reach the issue of whether the Defendant could be convicted of robbery in lieu of carjacking because we have determined that the evidence is sufficient to support the Defendant's carjacking conviction.

Defendant intentionally or knowingly obtained the victim's car through force or intimidation. The sole question before us is whether he obtained the car "from the possession of" the victim.

■ Our criminal code does not define the word "possession." When the Legislature does not provide a specific definition for a statutory term, this Court may look to other sources, including *Black's Law Dictionary*, for guidance. *See, e.g., State v. Fitz*, 19 S.W.3d 213, 216 (Tenn.2000) (relying on *Black's Law Dictionary* for guidance in construing the term "violence" as used in the robbery statutes). However, that source does not unequivocally provide an answer because it instructs us that

> [t]he law, in general, recognizes *two* kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

*Black's Law Dictionary* 1163 (6th ed.1990) [3] (emphasis added).

The Defendant argues that we should construe "possession" to mean actual possession. He contends that the victim in this case was too far away from her car at the time he accosted her to be in actual possession of it, such that he did not commit a carjacking. The State argues that we should construe "possession" to mean both actual and constructive possession.

We agree with the Defendant that a person is in actual possession of his or her car when in, on, or immediately adjacent to it. In this case, the victim was several yards away from her car when the Defendant accosted her. Nevertheless, we hold that the term possession as used in the carjacking statute should be construed to include the taking of this victim's car. We do so for three reasons.

## A. Different Statutory Language

First, the Legislature chose to use different language in the carjacking statute than it used in the robbery statutes or than Congress used in the federal carjacking statute. A comparison of the differing terminology persuades us that our General Assembly intended carjacking to include forcible takings of motor vehicles from victims even when the victim is some distance from his or her car at the time of the taking.

### 1. Tennessee's Robbery Statute

Carjacking is codified in our criminal code with the robbery offenses. *See* Tenn. Code Ann. §§ 39–13–401 to –404 (2006). Robbery is defined as "the intentional or knowing theft of property *from the person of another* by violence or putting the person in fear." Tenn.Code Ann. § 39–13–401(a) (2006) (emphasis added).[4] The words "from the person of another" indicate that the property is in close physical proximity to the victim when the property is taken. Significantly, this Court has long construed the term "from the person of another" to include both the theft of an object held by the victim or carried on the

---

**3.** This is the edition of *Black's Law Dictionary* that was current at the time the carjacking statute was enacted.

**4.** Aggravated robbery involves the use of a deadly weapon or the infliction of serious

bodily injury, Tenn.Code Ann. § 39–13–402(a) (2006), and especially aggravated robbery involves both the use of a deadly weapon and the infliction of serious bodily injury, *id.* § 39–13–403(a) (2006).

victim's body and the theft of an object from the victim's presence. *See, e.g., Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879, 881 (Tenn.1967) ("It is actual when the [theft] is immediately from the person; and constructive when in the possession or in the presence of the party robbed."); *see also State v. Nix,* 922 S.W.2d 894, 901 (Tenn.Crim.App.1995) (recognizing that the offense of robbery is committed where the offender, acting with the requisite intent, carries the property away "from the victim's presence").

Thus, if the Legislature had meant to limit carjacking to the taking of a vehicle from the victim's actual possession or from the victim's immediate presence, it would have used the same terminology it used in the robbery statute. Alternatively, the Legislature could have written the carjacking statute to preclude the taking of a motor vehicle "from the actual possession or presence of another." Our General Assembly chose to use less limiting language, however. That choice requires us to construe "possession" to include situations in which the victim is separated from her car by some distance.

### 2. *Federal Carjacking Statute*

The Legislature also rejected the language of the federal carjacking statute. As noted by the Court of Criminal Appeals, the legislative history of the carjacking statute, enacted in 1995, indicates that the General Assembly intended to make carjacking an offense that could be prosecuted in state courts under state law rather than in federal courts under the federal carjacking statute.[5] The federal carjacking statute provides that "Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce *from the person or presence of another* by force and violence or by intimidation, or attempts to do so, shall [be punished]." 18 U.S.C.A. § 2119 (West 2000) (emphasis added). Given that the relevant language of the federal statute—"from the person or presence of another"—closely resembles Tennessee's robbery statute, it is significant that our General Assembly also rejected this terminology.

Since the Legislature could have adopted language identical to that of either our robbery statute or the federal carjacking statute, or could have specified that a motor vehicle had to be occupied in some manner in order to be the subject of a carjacking, the language choices eschewed by the General Assembly are indicative of its intention to widen the distance a carjacking victim may be from her property as compared to the distance a robbery victim may be from his property at the moment of the taking.

### B. *Legislative History*

Second, the legislative debate occasioned during the adoption of the carjacking statute highlighted the General Assembly's concern with the risks peculiar to the crime of carjacking, risks that arise even if a victim is not literally touching her car. The General Assembly recognized that (1) a carjacking is usually committed in order to facilitate the perpetrator's flight from the scene of a prior crime; (2) the theft of the vehicle not only makes the perpetrator's escape more likely, but also puts the public at risk as the perpetrator flees; and (3) the theft of the vehicle deprives the victim of his or her freedom of movement. *See Senate Session*

**5.** *See House Judiciary Comm. Hearing on H.B. 891,* 99th Gen. Assem., 1st Sess. (Tenn. Mar. 3, 1995) (statement by Rep. Herron); *Senate Judiciary Comm. Hearing on S.B. 1325,* 99th Gen. Assem. 1st Sess. (Tenn. Apr. 18, 1995) (statements of Sens. Cohen, Gilbert, Jordan).

*Hearing on S.B. 1325*, 99th Gen. Assem., 1st Sess. (Tenn. Apr. 27, 1995) (statement of Sen. Cohen). Recognizing that these risks arise more frequently in carjackings than in simple robberies, the Legislature designated all carjackings to be Class B felonies.[6] *See* Tenn.Code Ann. § 39–13–404(b) (2006).

These risks are present even if the victim is separated from his or her car by some distance at the time of the taking. This is because of the unique nature of motor vehicles as compared to other forms of property subject to robbery. The active use of a vehicle involves frequent "comings and goings" by the driver. Generally, a car's driver is going to park and leave the vehicle upon reaching his or her destination. The risks inherent in carjacking are the same whether the offense is committed when the victim is leaving or returning to her vehicle or when she is driving it. Hence, to address adequately the Legislature's concerns with these risks, we must construe "from the possession of another" to include the possessory interest retained by a victim who is, at the time of the taking, in the process of leaving or returning to the immediate vicinity of her vehicle.

We recognize that the "classic" carjacking scenario involves the perpetrator attacking someone driving a car and either forcing the victim out of the car or, worse, forcing the victim to remain in the car with the carjacker. This criminal conduct obviously places the victim in considerable danger. It also encourages the perpetrator to leave the scene as quickly as possible, generating additional dangers to the general public. Alternatively, however, the perpetrator may gain access to a parked car by seizing its keys from a driver who has left the vehicle. This scenario may occur when, as in the instant case, the assailant knows (1) that the victim has the keys and (2) where the victim's car is located. This situation also places the victim in considerable danger. That the victim and his or her car may be separated by some distance does not lessen the threat to the victim's personal safety caused both by the perpetrator's demand and the perpetrator's subsequent taking of the car. Additionally, the distance between victim and car does nothing to lessen the dangers to the public once the assailant gains possession and control of the car.

### C. Other Jurisdictions

Finally, our holding that the term "from the possession of another" in the carjacking statute includes the taking in this case is consistent with the holdings of appellate courts in numerous other jurisdictions, including those jurisdictions with statutory language narrower than Tennessee's. For instance, as set forth above, the federal carjacking statute prohibits the taking of a motor vehicle "from the person or presence of another." 18 U.S.C.A. § 2119 (West 2000). Nevertheless, several feder-

---

**6.** Prior to enactment of Tennessee's carjacking statute, the theft of an automobile "from the person of another by violence or putting the person in fear" could be prosecuted by Tennessee's district attorneys as a simple robbery, a Class C felony. *See* Tenn.Code Ann. § 39–13–401 (2006). If the assailant used a deadly weapon or caused serious bodily injury to the victim, the robbery was a Class B felony. *See id.* § 39–13–402 (2006). The legislative history of the carjacking statute indicates that our General Assembly wanted *all* carjackings to be Class B felonies, even if they were committed without the use of a deadly weapon, so long as the offense was committed by force or intimidation. *See House Judiciary Comm. Hearing on H.B. 891*, 99th Gen. Assem., 1st Sess. (Tenn. Mar. 8, 1995) (statement of Rep. Herron); *Senate Judiciary Comm. Hearing on S.B. 1325*, 99th Gen. Assem., 1st Sess. (Tenn. Apr. 18, 1995) (statement of Sen. Cohen).

al appellate courts have upheld carjacking convictions where the victim was separated from his or her car by walls or distances of up to one block. *See United States v. Edwards,* 231 F.3d 933, 937 (5th Cir.2000) (upholding federal carjacking conviction where defendant used gun to obtain victim's car keys while victim was fifteen feet from parked car); *United States v. Moore,* 198 F.3d 793, 797 (10th Cir.1999) (affirming federal carjacking conviction where defendant accosted bank employee as she was exiting her car in parking lot, accompanied her into the bank building, tied her up, demanded her car keys, and fled the scene in her car); *United States v. Kimble,* 178 F.3d 1163, 1168 (11th Cir.1999) (affirming federal carjacking convictions where defendants robbed restaurant, obtained at gunpoint manager's keys to car parked outside, and fled in car); *United States v. Lake,* 150 F.3d 269, 273 (3d Cir. 1998) (affirming federal carjacking conviction where armed defendant accosted victim at beach and obtained keys to car parked approximately one block away).

Similarly, the California Court of Appeals has construed its state's carjacking statute so as to encompass takings of motor vehicles from a victim who is some distance away in spite of statutory language requiring that the taking be from the victim's "person or immediate presence." *See People v. Hoard,* 103 Cal. App.4th 599, 126 Cal.Rptr.2d 855, 862 (Cal. Ct.App.2002) (affirming carjacking conviction where defendant obtained employee's car keys during course of robbing jewelry store and fled in employee's car parked outside); *but see People v. Coleman,* 146 Cal.App.4th 1363, 53 Cal.Rptr.3d 505, 512 (Cal.Ct.App.2007) (overturning carjacking conviction where defendant accosted employee in building and forced her to give him keys to employer's truck parked outside because employee "was not within any physical proximity to the [vehicle], the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the [vehicle]"). The District of Columbia Court of Appeals has affirmed a carjacking conviction where the victim was accosted while standing several feet away from his car in spite of statutory language requiring that the taking be from the victim's "immediate actual possession." *See Beaner v. United States,* 845 A.2d 525, 532–34 (D.C.Ct.App.2004). In Maryland, the Court of Special Appeals affirmed the carjacking conviction of a defendant who accosted a driver after she had parked and walked some distance away from her vehicle in spite of statutory language requiring that carjackings be takings from the victim's "actual possession." *See Price v. State,* 111 Md.App. 487, 681 A.2d 1206, 1211–12 (Md.Ct.Spec.App.1996). And the Virginia Court of Appeals affirmed the defendant's carjacking conviction for taking a motor vehicle from "another in possession or control of the vehicle" after he accosted the victim while she was on her porch with her car parked several houses down the street and around the corner. The defendant demanded the victim's car keys, took them, ran to her car, and drove away. *See Bell v. Commonwealth,* 21 Va. App. 693, 467 S.E.2d 289, 292 (Va.Ct.App. 1996) (construing Virginia Code Annotated section 18.2–58.1).

These cases make clear that there is no bright line rule for determining what constitutes possession in this context. Courts construing their jurisdiction's carjacking statute take pains to consider the unique factors involved in driving, parking, and walking to and from one's motor vehicle. Thus, language referring to the victim's immediate presence and/or actual possession is generally construed to encompass some significant distance from one's car. Indeed, our research has revealed that, of those jurisdictions faced with this issue,

only Illinois has adopted a narrow interpretation of its statutory language. Because both our carjacking statute and its legislative history are significantly different from those of Illinois, we do not consider that jurisdiction's interpretation to be persuasive.[7]

## III. Jury Instruction

We emphasize that our construction of the term possession to include some physical distance between victim and vehicle is congruent with one of the evils at which the proscription against carjacking is aimed: the instantaneous or nearly instantaneous taking of a vehicle from another's possession so as to create the dangers inherent in a rapid getaway. Hence, a prosecutor's focus should be not only on the victim's physical proximity to his or her vehicle, but also on the time involved between the attack on the victim and the taking of the car. If the duration of this period can be measured in seconds rather than minutes, and if the victim, but for the force or intimidation used, would otherwise

be able to return to the vehicle and resist the taking, the taking may constitute a carjacking.

It is, of course, for the trier of fact to determine whether someone accused of carjacking took the motor vehicle "from the possession of another." To that end, we suggest that a trial court include the following instruction in its charge to the jury in a carjacking case:[8]

"From the possession of another" means that the person from whom the motor vehicle was taken was in, on, or adjacent to the motor vehicle at the time of the taking or was in such physical proximity to the motor vehicle at the time of the taking that he or she could have immediately become in, on, or adjacent to the motor vehicle but for the defendant's actions in accosting the person and/or taking the motor vehicle.

## CONCLUSION

In this case, the victim had parked her car, retained possession of her car keys, and walked a few yards from her vehicle

---

7. Illinois law provides that "[a] person commits vehicular hijacking when he or she takes a motor vehicle *from the person or the immediate presence of another* by the use of force or by threatening the imminent use of force." 720 Ill. Comp. Stat. Ann. 5/18–3(a) (West 2007) (emphasis added). In *People v. McGee*, 326 Ill.App.3d 165, 260 Ill.Dec. 558, 761 N.E.2d 741 (Ill.Ct.App.2001), the victim was in a house when her assailants forcibly took her car keys. The defendant then fled in the victim's car which was parked outside. The court held that the term "immediate presence" in the statute "means that the vehicle is within the immediate control of the alleged victim at the time of the occurrence." *Id.* at 745. Because the victim was in the house and her car was parked outside when it was taken, the court held "the vehicle was not taken from the immediate presence of the victim as required by the vehicular hijacking statute," *id.*, and overturned the conviction. In so holding, the court relied on legislative history in which the sponsor of the statute had stated that the law was aimed at takings

of vehicles while the victim was in it or next to it and that " 'you couldn't be in the store away from the car at the time.' " *Id.* (quoting 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 283 (statement of Sen. Hawkinson)).

8. In this case, the trial court charged the jury with the definitions of actual and constructive possession utilized in cases involving the possession of contraband. *See* T.P.I.-Crim. 31.04. The Court of Criminal Appeals found this instruction to have been harmless error and the Defendant does not challenge the instruction in his appeal to this Court. The aims of the statutes prohibiting the possession of contraband are sufficiently different from the aims of the carjacking statute to minimize their relevance to each other for purposes of construing the term "possession." We therefore discourage trial courts from using in carjacking cases Tennessee's pattern jury instruction defining possession in contraband cases.

when she was accosted by the Defendant. But for the Defendant's actions, she was in such physical proximity to her car at the time of the taking that she could have immediately become in, on, or adjacent to her car. Pursuant to our construction of the term "possession" as used in the carjacking statute, the victim was in possession of her car when the Defendant confronted her, knowingly obtained her keys by intimidation, and drove off in her car. Accordingly, the evidence is sufficient to support the Defendant's conviction of carjacking.

The judgment of the Court of Criminal Appeals affirming the Defendant's conviction and sentence is affirmed. It appearing that the Defendant is indigent, the costs of this cause are taxed to the State of Tennessee.