IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2018 Session

## STATE OF TENNESSEE v. JACQUET MOORE

**Appeal from the Criminal Court for Shelby County**
**No. 14-05951       James M. Lammey, Judge**

_____

**No. W2017-02058-CCA-R3-CD**

_____

In November 2014, a Shelby County grand jury indicted the defendant, Jacquet Moore, for an aggravated rape committed in 2000. A jury convicted the defendant as charged and he received a sixty-year sentence. On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction and the trial court's evidentiary rulings prohibiting him from eliciting testimony from witnesses regarding the area of the crime being one "known for prostitution" and from cross-examining the State's DNA expert on an unidentified individual's DNA found on the victim's vaginal swab. Based upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Jacquet Moore.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace and Gavin Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On January 23, 2000, the defendant committed the aggravated rape of the victim, J.B.,[1] in Shelby County, Tennessee. Tenn. Code Ann. § 39-13-502.

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials.

Following the rape, the victim reported the crime to the police and submitted to a rape kit test. The defendant was not indicted, however, until November 20, 2014. He proceeded to trial on December 6, 2016.

On the day of trial, the State filed several motions *in limine*, including one pursuant to Rule 412 of the Tennessee Rules of Evidence to "prohibit references by counsel for [the] defendant and by all defense witnesses regarding any alleged sexual behavior on the part of the victim with anyone other than the defendant." In the motion, the State noted the defendant failed to file a written motion ten days prior to trial indicating his intent to use evidence of the victim's sexual behavior as required under Rule 412. Tenn. R. Evid. 412. Separately, the State filed a motion *in limine* to preclude the defense "from asking the victim whether she was engaged in prostitution on the date of offense without a good faith basis" or "from asking any witness if the locations of the offense or the surrounding areas have a reputation for prostitution, high crime, or drug activity." The trial court granted both motions and the State proceeded with its case-in-chief.

The victim testified regarding her memory of the night of the rape. That evening, the victim's sister dropped her off at Mirage, a nightclub located on Brooks Road. When her sister did not come to pick her up around 3:00 a.m., the victim waited for a taxi at the nightclub for approximately one hour. The taxi never arrived, so the victim began walking down the street "to find a phone to call again." As she walked, the defendant, a man the victim did not know, pulled up beside her in a small, beige car and offered her a ride. The victim declined, but the defendant continued to ask her to get in his car. After the victim declined again, the defendant stopped the car, got out, and demanded the victim get in the car. According to the victim, the defendant stated, "if you don't get in the car, I'm going to kill you." Scared the defendant "was going to kill [her]," the victim got in the car. Once inside, she saw a gun "[i]n the middle part of the car." The victim stated the gun did not move from the center console.

The defendant drove to a secluded parking lot where he "took [the victim's] hand and put it on his leg." The victim removed her hand, but the defendant "put [her] hand back on his leg." The defendant then "took [the victim's] hand and put it down his pants." The victim touched the defendant's "private" and he told the victim to "take [her] pants off." The victim said "no, I don't want to," but the defendant again demanded her to remove her pants. After the victim said "no" again, the defendant got out of the car, walked to the passenger's side, opened the door, and told the victim "to do oral sex." According to the victim, she again touched the defendant's "private" with her hand. The defendant then forced the victim to get out of the car, pulled her pants and underwear down, and "had sex with [her] from behind." The victim was "[u]p against the car and

- 2 -

the door" as the defendant's penis penetrated her vagina. The victim complied with the defendant's demands because she feared "[h]e was going to hurt [her] or kill [her]."

After the rape, the defendant dropped the victim off in an area near her apartment. The victim walked home and called the police who took her to the Rape Crisis Center where she was evaluated and examined. The victim also gave a statement to police. At trial, the victim testified she "was just scared for [her] life" as a result of the defendant's actions and she felt forced into complying with his demands.

In 2014, Sergeant Israel Taylor of the Memphis Police Department contacted the victim regarding the rape. Sergeant Taylor provided the victim with a photographic lineup on February 5, 2014, and she identified the defendant as the man who raped her. In identifying the defendant, the victim noted under his photograph, "This looks like the guy because of his fat face. I remember that he had a heavy body." The victim told Sergeant Taylor she was only about 50% sure in her identification of the defendant.

During cross-examination, the victim acknowledged she told police in a statement given in 2014 that the defendant put a gun in her back as he forced her into his car. However, in her statement given in 2000, the victim stated she did not see a gun but "[the defendant] said he had a gun." The victim clarified on redirect that she first saw the gun when she got in the defendant's car where "[i]t was on the console of the car."

After the victim's testimony, the defense moved, both orally and in writing, to be allowed to cross-examine the State's DNA expert "regarding the presence of an unidentified DNA sample which was found and tested in the specimen from the vaginal swab" of the victim. Defense counsel argued:

> We've limited the scope of what we're going to ask, as to was there another DNA. Ask the question about how long in general does DNA from the male stay inside of a woman. And that would be really the scope of the questions we want to ask, Your Honor, as far as cross examination.

The State objected, arguing the proposed line of questioning violated the protections established under Rule 412 of the Tennessee Rules of Evidence and further noting the defendant failed to comply with the procedural requirements of the rule. Additionally, the State indicated it did not plan to enter the DNA report into evidence and nothing in the report specified the unidentified DNA profile belonged to a male. The State explained:

> And if they wish to argue to this jury or imply to this jury indirectly that there was another male involved or perhaps another person who could

have raped her, then that should have been filed in a 412 motion, and it was not. And to imply she had sex with anyone, whether it be consensual or not, falls under 412.

The trial court agreed with the State and denied the defendant's motion. The State then continued with its proof.

Sally Discenza, an expert in sexual assault and a forensic nurse examiner with the Rape Crisis Center, examined the victim at 6:30 a.m. on January 23, 2000. Nurse Discenza found the victim suffered no physical injuries and obtained the victim's medical and forensic history. In doing so, Nurse Discenza described the victim as expressed, meaning "she showed significant emotion," and noted "she was trembling, she was tearful, she was agitated, and at times, she was staring." Nurse Discenza detailed the victim's story as told to her during the examination, as follows:

[The victim] told me that she was waiting for a taxi that did not arrive. And so she started to walk to go use a telephone. And an unknown male, African-American male offered to give her a ride. And when she refused, he implied that he had a gun under his seat, and he forced her into the car. And she was taken to a secluded area, and he first attempted to make her touch his penis. And then he forced unprotected oral and vaginal penetrations.

Nurse Discenza performed a rape kit test on the victim. She obtained "a dried-blood standard; a vaginal slide; an oral slide; a debris lifter; a vulvar swab, which is external; a vaginal swab, which is internal; and another oral swab; and what's called a checklist, which sums up what occurred and what swabs were taken." Nurse Discenza explained the dried-blood standard is "used to determine the victim's DNA versus the perpetrator's DNA."

Jessica Marquez, an expert in forensic analysis of biological fluids and DNA analysis, examined the victim's blood sample, vaginal and oral swabs and slides, and underwear. Ms. Marquez tested the victim's vaginal swab for semen which "revealed the presence of sperm, spermatozoa. And then that sample was then taken on to DNA analysis, and a profile was developed from that sample." Specifically, Ms. Marquez developed a male profile from the vaginal swab, entered the profile into the DNA database, and found the profile matched the defendant. She then compared a buccal swab taken from the defendant to the profile developed from the victim's vaginal swab, and determined "the major contributor matched [the defendant]." Statistically, Ms. Marquez explained the chance of her findings being incorrect "came out to be greater than one in the current world population."

In 2014, Sergeant Taylor was assigned to the DNA unit "tasked with the responsibility of testing the [rape] kits and investigating" any cases resulting therefrom. In this capacity, Sergeant Taylor met with the victim in February 2014, and explained he "had a suspect in her case." Sergeant Taylor identified the defendant as a suspect "through a DNA database." He then presented the victim with a photographic lineup, and she made a "tentative" identification of the defendant. Sergeant Taylor considered the victim's identification of the defendant as "tentative" rather than "positive" because the victim "wasn't 100 percent positive, but she was 60 percent sure this was him." Despite her apprehension, the victim told Sergeant Taylor "that was the face of the man who raped me." Sergeant Taylor obtained a search warrant to collect the defendant's DNA and interviewed the defendant who, after he waived his rights, denied knowing the victim. After seeing a picture of the victim, the defendant noted on the photo, "I don't recognize," and further told Sergeant Taylor, "That doesn't look like anybody I would get with."

At the close of the State's case, the defendant elected not to testify and offered no proof. The jury convicted him as charged, and the trial court sentenced the defendant to sixty years to be served at 100%. This timely appeal followed.

### *Analysis*

I.    *Sufficiency of the Evidence*

On appeal, the defendant challenges the sufficiency of the evidence relating to his conviction for aggravated rape, arguing "no reasonable juror could have concluded that [the] [d]efendant was 'armed with' a weapon." We, along with the State, disagree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all

conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

As charged in the present indictment, an aggravated rape "is unlawful sexual penetration of a victim by the defendant" through force or coercion "and the defendant is armed with a weapon." Tenn. Code Ann. § 39-13-502. To be guilty of aggravated rape, the defendant must have "used force or coercion to accomplish the act of unlawful penetration and the defendant was armed with a weapon during at least part of the time force or coercion was used." *State v. James Thomas, Jr.*, No. M2014-00972-CCA-R3-

CD, 2015 WL 4484888, at *4 (Tenn. Crim. App. July 23, 2015). The terms "armed with" and "in possession" are one and the same. *Id.* (citing *State v. Moore*, 703 S.W.2d 183, 186 (Tenn. Crim. App. 1985)). Actual possession occurs when a defendant has "direct physical control over a thing, at a given time." *Id.* (quoting *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) (internal citations omitted)). "Constructive possession 'requires that a defendant have the power and intention . . . to exercise dominion and control' over the given item allegedly possessed." *Id.* (quoting *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (internal quotations omitted).

Here, the defendant argues the evidence does not support the jury's finding that he was armed with a weapon during the rape because "[n]o proof was offered showing that [the] [d]efendant had a gun in his hand when he ordered the victim into the car." The State asserts "the defendant had constructive possession of the gun as it sat in the console of the car within his reach." We agree with the State.

At trial, the victim testified the defendant forced her into his car by threatening to kill her. Once inside the car, she saw a gun sitting on the center console. The defendant then drove the victim to a secluded parking lot, forced her out of the car, and raped her. The victim testified she feared for her life during her encounter with the defendant and felt forced to get into his car and comply with his subsequent demands. Though the gun remained on the center console of the car as the defendant ordered the victim into his car and as he raped her, it is clear the defendant had "the power and intention . . . to exercise dominion and control" over the gun throughout the encounter. *James Thomas, Jr.*, 2015 WL 4484888, at *4 (internal quotations omitted). As such, the record demonstrates the defendant was "armed with" a gun during the rape and he is not entitled to relief on this issue.

## II.    *Relevancy Determinations*

The next two issues raised by the defendant on appeal stem from the trial court's evidentiary determinations made both prior to and during trial. First, the defendant argues the trial court erred "by not allowing the defense to elicit testimony establishing that the location of the crime was an area known for prostitution," claiming such evidence was relevant "and would have given the jury a full picture of the events that night." Second, the defendant asserts the trial court erred in barring him from cross-examining the State's DNA expert "concerning DNA evidence from an unknown individual as an exception to Rule 412." The State contends the trial court correctly ruled that both lines of questioning were inadmissible, and we agree as our review of the record reveals none of the proffered evidence was relevant to the defendant's trial.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Irrelevant evidence is not admissible. Tenn. R. Evid. 402. We review the trial court's relevancy determinations for an abuse of discretion. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997) (citations omitted).

The defendant asserts the trial court erred by not allowing him to question witnesses about the area of the crime being "known for prostitution." In prohibiting this line of questioning, the trial court stated, "to suggest that to the jury without a good faith basis to think she was a prostitute is totally improper." While we agree the suggested implication was improper, we also consider it to be irrelevant to the issue of whether the defendant committed the aggravated rape of the victim. The behavior of the victim in no way refutes the victim's identification of the defendant as her perpetrator or the finding of the defendant's DNA on the victim's vaginal swab. The trial court did not abuse its discretion in prohibiting the alleged "prostitution" evidence sought by the defendant as it is clearly irrelevant. The defendant is not entitled to relief.

The defendant also argues the trial court erred by prohibiting him from questioning the State's DNA expert regarding a minor, unidentified DNA profile found on the victim's vaginal swab. The record, however, again makes clear the evidence suggested by the defendant was not relevant. In denying the defendant's motion on this issue, the trial court stated the existence of the minor profile found on the vaginal swab "doesn't mean she wasn't raped," and we agree. As explained above, the evidence was more than sufficient to support the defendant's conviction for aggravated rape as his DNA was found on the victim's vaginal swab and the victim identified him as her perpetrator. Furthermore, the DNA report did not assign a gender to the minor profile from the "unidentified individual," and it in no way refutes the fact that the defendant's DNA was found on the victim's vaginal swab. The existence of the minor, unidentified individual's DNA was not relevant. Additionally, the presence of another's DNA profile on the victim's vaginal swab has no bearing on whether the victim consented to sexual intercourse with the defendant. *See Joe Turner v. State*, No. E2015-00849-CCA-R3-PC, 2017 WL 928680, at *7 (Tenn. Crim. App. Mar. 8, 2017), *no perm. app. filed.* Thus, the trial court properly excluded it. The defendant is not entitled to relief.

Further, because the defendant was charged with aggravated rape, the rules outlined in Rule 412 of the Tennessee Rules of Evidence applied to his trial. Tenn. R. Evid. 412. As noted by the State, in order to discuss specific instances of the victim's sexual behavior at trial, which would include evidence of an unidentified individual's DNA found on the victim's vaginal swab, the defendant was required to follow the procedures outlined in Rule 412. Thus, the defendant needed to file a written motion "no

later than ten days before the date on which the trial [was] scheduled to begin" detailing "the specific evidence and the purpose for introducing it."[2]  Tenn. R. Evid. 412(d).  The record indicates the defendant patently failed to comply with the requirements of Rule 412 and thus, the trial court correctly prohibited the defendant from questioning the State's DNA expert regarding the unidentified DNA profile.  Tenn. R. Evid. 412(c), (d). The defendant is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE

---

[2]Though exceptions to this rule exist, they do not apply to the defendant's case.