IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 5, 2019

**STATE OF TENNESSEE v. DWIGHT TWARN CHAMPION**

**Appeal from the Circuit Court for Madison County**
**No. 18-295   Roy B. Morgan, Jr., Judge**

_____

**No. W2019-00230-CCA-R3-CD**

_____

The Madison County Grand Jury indicted Dwight Twarn Champion, Defendant, and Lena Virginia Cole, Co-Defendant, for possession with intent to sell or deliver 0.5 grams or more of cocaine, a Schedule II controlled substance, in counts one and two; simple possession of marijuana, a Schedule VI controlled substance, in count three; and possession with intent to use drug paraphernalia in count four. After a trial, a jury found Defendant guilty of facilitation of criminal attempt of possession of cocaine with intent to sell in count one, facilitation of criminal attempt of possession of cocaine with intent to deliver in count two, and simple possession of marijuana in count three. The jury was unable to reach a verdict in count four, and a *nolle prosequi* was entered on that count. The trial court merged counts one and two and, pursuant to an agreement with the State, sentenced Defendant as a Range III career offender to twelve years in the Tennessee Department of Correction with a sixty percent release eligibility for merged counts one and two and to eleven months and twenty-nine days with a seventy-five percent release eligibility for count three, to be served concurrently to counts one and two, for a total effective sentence of twelve years at sixty percent. Defendant filed a motion for a new trial or verdict of acquittal, and the trial court denied the motion. On appeal, Defendant argues that there was insufficient evidence to sustain his convictions and that the verdicts were against the weight of the evidence. After a thorough review of the record and applicable case law, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

George Morton Googe, District Public Defender, and Jeremy B. Epperson, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Dwight Twarn Champion.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**Factual and Procedural History**

At trial, Nathaniel Shoate testified that he was a narcotics investigator with the Madison County Sheriff's Department and had been serving in that capacity for ten years. Investigator Shoate stated that he and other investigators executed a search warrant at a home on Labelle Street in Jackson. Investigator Shoate searched the bedroom in the home and found a "rolled marijuana cigarette blunt on the nightstand."

Michael Byrd testified that he was an investigator with the Madison County Sheriff's Department and had been in law enforcement for approximately eight and a half years. Investigator Byrd assisted with the execution of the search warrant at the home on Labelle Street. Investigator Byrd found currency wrapped in a sock in a dresser. He also found a black wallet with currency in it. Based on the amount of currency and the different denominations, Investigator Byrd concluded that narcotics transactions were possibly taking place. On cross-examination, Investigator Byrd stated that he did not know to whom the socks or wallet with the currency belonged.

Jarrod Cobb testified that he was a supervisor in the City of Jackson Metro Narcotics unit and had been with Metro Narcotics for about ten years. Investigator Cobb assisted with the execution of the search warrant at the home on Labelle Street. Investigator Cobb found on the kitchen counter a glass Pyrex measuring cup with a white powdery residue inside. While still at the house, Investigator Cobb performed two different "field tests" on the measuring cup, which he described as "chemical tests" where the substance changes color if it is a narcotic. Investigator Cobb agreed that a field test is not conclusive but stated that the tests had "been reliable for [him] in the past[.]" Based on his training and experience, Investigator Cobb concluded that the owner of the measuring cup possibly used it to manufacture crack cocaine. Investigator Cobb noted that a Pyrex measuring cup is not utilized for a person to use or inhale cocaine but is "strictly for manufacture" of crack cocaine.

On cross-examination, Investigator Cobb agreed that he did not know who put the white powdery substance in the Pyrex measuring cup. He stated that he did not know what chemicals were used in the field tests kits. Investigator Cobb assented that there

had been times when a substance was presumed to be narcotics, but after the Tennessee Bureau of Investigation ("TBI") tested the substance, it was found to not be a controlled substance.

On redirect examination, Investigator Cobb stated that he preferred to do multiple field tests, as he did during the search of the Labelle Street home, because it reduced the chance that his field test results were incorrect.

Cathy Dent testified that she was a special agent with the TBI and had been with the TBI for twenty years. Agent Dent stated that she assisted with the execution of the search warrant on the Labelle Street home and that she searched the yard and the vehicles. She said that, when she got to "a thicket in the very back," she found a great deal of trash in the thicket. Along the property line adjoining the residence on the left, she found a black plastic bag and brought it to the attention of the lead investigator. Agent Dent testified that it would be common for a drug dealer to place their "stash" outside and away from their person.

On cross-examination, Agent Dent stated that, after she drew attention to the black plastic bag, she did not remain to observe the other investigators open it. She agreed that she could not tell how long the plastic bag had been there. She said that the plastic bag did not have any identifiers connecting it with a specific person. Agent Dent stated that she did not investigate the property boundaries before her search and that she just had to "guess . . . whose line would go to what spot." She agreed that she did not communicate with any neighbors.

Dennis Ifantis testified that he was a narcotics investigator with the Madison County Sheriff's Office and had been with the Sheriff's Office for approximately twelve years. Investigator Ifantis stated that he investigated the home on Labelle Street, which belonged to Co-Defendant Cole. He said that Defendant was in a relationship with Co-Defendant Cole and that Defendant frequently spent the night at Co-Defendant Cole's home. Investigator Ifantis found several documents tying Defendant and Co-Defendant Cole to the home, including Defendant's paystubs and credit cards, Co-Defendant Cole's driver's license, and a Tennessee auto insurance card for Defendant and Co-Defendant Cole, which covered a BMW.

During the search of the Labelle Street home, Investigator Ifantis took pictures and gathered evidence found by other investigators. Investigator Ifantis took pictures of the marijuana blunt found by Investigator Shoate. He said that "marijuana is one of the easiest narcotics to detect and identify" based on its visual and olfactory properties. Investigator Ifantis collected and photographed the Pyrex measuring cup and submitted it to the Jackson Police Department for fingerprint analysis, but none of the fingerprints

were able to be lifted.  He stated that the fact that the Pyrex measuring cup tested positive for cocaine in the field indicated the sale and delivery of narcotics rather than personal use of narcotics.  He said:

> Pyrex measuring glasses are commonly used to measure and mix cutting agents, and a cutting agent is — it can be a vitamin, it can be flour, baking soda, whatever they choose.  It can be anything non-narcotic.  And the intent of that is so when you take cocaine in its form and you manufacture it into crack cocaine, you can cut it with these agents.  That's — you could practically quadruple the amount that you have and maximize your profits during sales.

During the search, Investigator Ifantis photographed the currency found by Investigator Byrd.  The currency totaled close to two thousand dollars in different denominations and in coins.  Investigator Ifantis stated that seeing that much money in all denominations "would be indicative of illegal narcotic[s] sales."

Investigator Ifantis stated that he examined and photographed the contents of the plastic bag found by Agent Dent.  He found a digital scale, 5.2 grams of cocaine, 13.9 grams of crack cocaine, and suboxone strips[1] inside the black plastic bag.  Based on the "sheer weight" of the narcotics located in the black plastic bag and the presence of the digital scale, Investigator Ifantis stated that the amount was consistent with intent to sell and distribute narcotics rather than personal use of narcotics.  He said that one "hit" of crack cocaine would be approximately 0.1 gram, so the approximately nineteen grams found during the search was not likely for personal use.  Investigator Ifantis also said that digital scales were essential in drug transactions and ensured that drug dealers were not "ripping themselves off."  Investigator Ifantis testified that he sent the powder cocaine and crack cocaine to the TBI for further testing.

Investigator Ifantis said that, to the best of his knowledge, the black plastic bag was found at the Labelle Street property and not on the neighbor's lot.  He stated that, when the black plastic bag was located and examined in the backyard, Defendant and Co-Defendant Cole were being detained in the front yard near the porch and that Defendant and Co-Defendant Cole had no way to view the search of the bag or where it was found.  Based on his experience in narcotics investigations, Investigator Ifantis explained why a drug dealer would hide his narcotics in a thicket on a wood line:

---

[1] Investigator Ifantis explained that suboxone strips are a Schedule III narcotic prescribed to addicts.  The strips are "sold to people who don't want to go to the doctor to obtain the[m], and they can chew them.  They can actually go through a chemical process to take out the concentrated narcotic that's in it."

- 4 -

[Drug dealers] will separate themselves from the dope and any other incriminating evidence, and they'll go to extreme measures as selling dope out of one house but living at another, which we could call a trap house, and they might even hide dope off their property. We've found dope underneath someone else's house on someone else's property that had nothing to do with it, and, therefore, it makes it extremely difficult for us to prosecute it and make a case out of it, but it is possible under certain circumstances.

Investigator Ifantis noted that three cell phones were located in the back bedroom of the Labelle Street home. He stated that having multiple cell phones was common in illegal drug transactions. Investigator Ifantis explained that "[o]ne [phone] is for personal use and the other one is called a drop phone . . . [which] is one that you would make your drug transactions on and then eventually drop. Basically you get a new number and a whole new phone . . . in an effort to evade law enforcement." Investigator Ifantis was able to ascertain that one of the phones belonged to Co-Defendant Cole, but that phone did not contain any illegal activity. The other two cell phones were not operational.

Investigator Ifantis testified that he spoke to Co-Defendant Cole at the scene after giving her *Miranda* warnings. Co-Defendant Cole told him that there was a marijuana blunt in the bedroom but did not say anything about the Pyrex measuring cup or the black plastic bag along the tree line of the property. Investigator Ifantis spoke to Defendant once he was in jail and told Defendant that the investigators found "dope" in his backyard. Investigator Ifantis said that Defendant "was surprised" by this news. Later, Investigator Ifantis listened to a recording of Defendant's "booking call" in which Defendant told someone that there "wasn't nothing on that property. That sh** was next door. . . . They come down and swear by nine it was on the property. That sh** wasn't on no property."

On cross examination, Investigator Ifantis stated that there was nothing about owning a change jar or about small denominations of currency that, by themselves, indicated drug use. He said that, on two occasions, he attempted to talk to the next door neighbors of Defendant and Co-Defendant Cole, but the neighbors did not answer the door. He did not attempt to speak with any other neighbors. Investigator Ifantis agreed that he did not see who placed the black plastic bag with the drugs near the property line and that he did not speak with any witness who saw someone place the plastic bag. He agreed that he told Defendant that a black plastic bag was found before Defendant was heard talking about the bag in the "booking call." He also agreed that, while he was searching the black plastic bag in the backyard, he was not aware of whether Defendant and Co-Defendant Cole were viewing his activities.

Carter Depew testified as an expert witness in forensic chemistry and stated that she was a special agent forensic scientist with the TBI for two years. Agent Depew stated that she determined the two white powdery substances submitted in the present case to be cocaine.

The court instructed the jury on the charged offenses in all four counts and also on several lesser-included offenses, including facilitation of possession of cocaine with intent to sell or deliver, criminal attempt of possession of cocaine with intent to sell or deliver, facilitation of criminal attempt of possession of cocaine with intent to sell or deliver, and simple possession of cocaine in counts one and two. After deliberations, the jury found Defendant guilty of facilitation of criminal attempt of possession of cocaine with a weight of 0.5 grams or more with intent to sell, as a lesser-included offense in count one, facilitation of criminal attempt of possession of cocaine with a weight of 0.5 grams or more with intent to deliver in count two, and possession of marijuana in count three. The jury was unable to reach a verdict in count four.

At the sentencing hearing, the trial court merged counts one and two and sentenced Defendant pursuant to an agreement with the State as a Range III career offender to twelve years in the Tennessee Department of Correction with a sixty percent release eligibility and to eleven months and twenty-nine days with a seventy-five percent release eligibility for count three, to be served concurrently with counts one and two, for a total effective sentence of twelve years at sixty percent.

At a hearing on Defendant's timely Motion for a New Trial, Defendant argued that the evidence was insufficient to sustain his convictions. The trial court denied Defendant's motion, finding that the evidence was sufficient to support the verdict and that the verdict was not against the weight of the evidence. This timely appeal follows.

## Analysis

Defendant argues that the evidence at trial was insufficient to sustain his convictions. The State responds that the evidence was sufficient for the charged offenses and for the "vicarious responsibility of [D]efendant as a facilitator of criminal conduct of another by knowingly furnishing substantial assistance in the attempt to possess cocaine with the intent to sell."

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence

are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

*Possession*

A conviction for possession of a controlled substance with intent to sell or deliver may be had upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). When a person "knowingly has direct physical control over a thing, at a given time, [that person] is then in actual possession of it." *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) (quoting Black's Law Dictionary 1163 (6th ed.1990)). When a person knowingly has "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others[,]" that person has constructive possession over the object. *United States v. Craig*, 522 F.2d 29, 32 (6th Cir. 1975) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)); *see also State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). However, "the mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing State v. *Cooper,* 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper,* 736 S.W.2d at 129.

*Simple Possession of Marijuana*

Marijuana is a Schedule VI controlled substance. Tenn. Code Ann. § 39-17-415(a)(1) (2017). "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a) (2017).

Here, there is sufficient evidence to support Defendant's constructive possession of the marijuana found in the bedroom. While Defendant was not a permanent resident at the Labelle Street home, he spent a great deal of time there and often spent the night. His paystubs and auto insurance card were located in the residence. Defendant was also present in the same room and at the same time the investigators found the marijuana blunt. This court has previously held, based on constructive possession, that the evidence was sufficient to convict an occasional overnight guest who was present at the time and close to the location where drug paraphernalia was found. *State v. Edward Poe*, No. M2007-01714-CCA-R3-CD, 2008 WL 732147, at *5 (Tenn. Crim. App. Mar. 17, 2008), *perm. app. denied* (Tenn. Sept. 29, 2008). The evidence is sufficient to establish that Defendant constructively possessed the marijuana blunt.

Defendant argues that the marijuana blunt was never sent to the TBI for conclusive testing; therefore, the evidence was insufficient that the blunt actually contained marijuana. However, Co-Defendant Cole told investigators that there was a marijuana blunt in the bedroom. Investigator Ifantis testified that marijuana was the one of the easiest narcotics to identify. Based upon years of training and experience, Investigator Ifantis recognized the marijuana in the bedroom by sight and odor. There was sufficient evidence for a reasonable juror to conclude that the blunt contained marijuana and that Defendant constructively possessed it. Defendant is not entitled to relief.

*Facilitation of Criminal Attempt of Possession with Intent to Sell or Deliver Cocaine*

When convicted of a lesser-included offense, the proof must be sufficient to support each and every element of the convicted offense to sustain a conviction. *State v. Edward Lephanna Kilcrease*, No. M2013-00515-CCA-R3-CD, 2014 WL 2832624, at *4 (Tenn. Crim. App. June 20, 2014) (citing *State v. Parker,* 350 S.W.3d 883, 909 (Tenn. 2001)), *perm. app. denied* (Tenn. June 20, 2014)). "If every element is not supported by sufficient proof, the defendant is entitled to a reversal of the conviction." *Parker*, 350 S.W.3d at 909. The fact "that the proof may support conviction of a different, even 'greater' offense does not [remove] the constitutional requirement that the proof support each and every element of the offense for which the defendant was actually convicted." *Edward Lephanna Kilcrease*, 2014 WL 2832624, at *4 (quoting *State v. Jeremy Wendell Thorpe,* No. M2012-02676-CCA-R3-CD, 2013 WL 5436701 (Tenn. Crim. App. Sept. 27, 2013), *perm. app. granted* (Tenn. Feb. 11, 2014)).

As charged in the present indictment, possession of a controlled substance with intent to sell or deliver occurs when a person knowingly "[p]ossess[es] a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (2017). Facilitation of a felony occurs when a person,

"knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2017). Under Tennessee Code Annotated section 39-12-101,

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
>> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>>
>> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>>
>> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101 (2017). "Facilitation of criminal attempt" is not statutorily defined, but reading the two statutes together, the State would have had to prove that Defendant (1) knew that another intended to commit criminal attempt of possession of cocaine with intent to sell or deliver, and (2) knowingly furnished substantial assistance in the commission of the criminal attempt of possession of cocaine with intent to sell or deliver.

As stated above, Defendant was a regular overnight guest at the Labelle Street home and was present at the time of the search when the cocaine was seized. A rational juror could conclude that the investigators found the cocaine on the property of the Labelle Street home when Defendant was present. Thus, Defendant constructively possessed the cocaine. Moreover, the Pyrex measuring cup in the common area of the kitchen field tested positive for trace amounts of cocaine, and investigators testified that Pyrex cups were used for the manufacture of crack cocaine, not for personal use. A rational juror could conclude that Defendant provided substantial assistance to Co-

Defendant by using the Pyrex measuring cup in attempting to manufacture cocaine for sale or delivery. In addition, Defendant could not view the investigators' location when they found the black plastic bag containing the cocaine, and Defendant's jailhouse conversation discussing the location of the bag showed that he knew of its whereabouts. From this, a rational juror could conclude that Defendant or Co-Defendant put the bag in the yard along the property line, and thus Defendant constructively possessed it. The large amount of narcotics found in the black plastic bag and the amount of cash in all denominations are evidence that the constructive possession of the drugs was for the purpose of sale or delivery and not just for personal use. The evidence is sufficient to sustain a conviction of facilitation of criminal attempt of possession of cocaine with intent to sell or deliver. Defendant is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 10 -