FILED

09/13/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 13, 2021

## STATE OF TENNESSEE v. CLARENCE WILLIS MOORE, JR.

**Appeal from the Criminal Court for Wilson County
No. 95CC2-2017-CR-372     Brody N. Kane, Judge**

_____

### No. M2020-00704-CCA-R3-CD

_____

The Wilson County Grand Jury charged Defendant, Clarence Willis Moore, Jr., with four counts of selling 0.5 grams or more of cocaine within 1,000 feet of a child care agency in violation of the Drug-Free School Zone Act. Following trial, a jury convicted Defendant in counts one and three of sale of "Schedule II, cocaine, within 1,000 feet of a school zone."[1] The jury found Defendant not guilty in counts two and four. At the sentencing hearing, the trial court determined that Defendant's Class B felony convictions were not subject to a one classification increase under Tennessee Code Annotated section 39-17-432(b)(1) because the offenses occurred within the prohibited zone of a childcare center. *See* Tenn. Code Ann. § 39-17-432(b)(3) (2016). The court sentenced Defendant as a Range III persistent offender to twenty-five years in Count 1 and twenty-two years in Count 3, ran the sentences consecutively, and imposed a fine of $2,000 on each count. Pursuant to Tennessee Code Annotated section 39-17-432(c), the court ordered Defendant to serve the minimum twenty-year sentence on each count. Following a thorough review of the record and applicable law, we conclude that the evidence was insufficient to prove that the offenses occurred within 1,000 feet of a childcare center or a child care agency. Because the evidence was insufficient to establish a violation of section 39-17-432(b), the court erred in ordering Defendant to serve the minimum sentences for the two Class B felonies. Accordingly, we affirm the judgments of conviction and the total effective sentence of

---

[1] The *drug-free zone* is the area within 1,000 feet of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park. The effect of instructing the jury that Defendant was charged with selling Schedule II cocaine within 1,000 feet of *a school zone* was to begin the drug-free zone where it ended, to increase the drug-free zone by 1,000 feet, and to make the total area of the drug-free zone approximately five times larger. Although not included in the record, the verdict forms provided to the jury apparently compounded the error because the jury foreperson announced that the jury found Defendant guilty of selling Schedule II cocaine *within 1,000 feet of a school zone* in Counts 1 and 3. Defendant did not object, so the error in the instructions and the verdict form is waived. Tenn. R. App. P. 36(a); *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008) ("The failure to make a contemporaneous objection constitutes waiver of the issue on appeal.")

forty-seven years with a release eligibility of forty-five percent but modify the sentence to exclude the harsher penalty requiring service of the twenty-year minimum sentence on each count. We remand for entry of new judgments of conviction for Counts 1 and 3 consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed, Sentences Modified and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Thomas Ryan Rumfelt, Mount Juliet, Tennessee, (on appeal), and Harry A. Christensen, Lebanon, Tennessee, (at trial), for the appellant, Clarence Willis Moore, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Jason L. Lawson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background[2]**

Lebanon Police Department ("LPD") Detective Chris Rickles testified that he was assigned as a narcotics investigator to the "Lebanon/Wilson County Task Force" in 2016. Through the use of a confidential informant ("C.I."), the Task Force set up a series of controlled buys with Defendant.

Detective Rickles testified that, on May 26, 2016, there was a controlled buy operation with Defendant as the target. Detective Rickles and C.I. met at a secure location. C.I. was searched prior to this buy by Detective Rickles and Detective Kenneth Powers, who were on scene that day. C.I. had no illegal weapons, contraband, or money on him prior to the controlled buy. C.I. was given $1,600 by Detective Rickles to purchase crack cocaine. Detectives equipped C.I. with a recording device that picked up audio and video, which was monitored in real time. C.I. proceeded to an apartment on East Main Street in Lebanon. Surveillance was maintained on C.I. on the way to the controlled buy, and he made no stops. Detective Rickles later identified Defendant handing over packaged crack cocaine to C.I. by viewing the video from the recording device. Portions of the video of the May 26 controlled buy were played for the jury. Detective Rickles positively identified

---

[2] We will only discuss the facts relevant to the counts for which Defendant was convicted.

Defendant as the person who went inside the apartment with C.I. C.I. purchased approximately one ounce of crack cocaine for $1,600 from Defendant.

Detective Rickles followed the same procedures with C.I. on June 9, 2016. Detective Rickles and C.I. spoke on the phone and then met at a secure location where both Detective Rickles and Detective Jay Spicer were present. C.I. was searched to ensure there were no "illegal weapons, contraband or money found on his person." His vehicle was also searched. C.I. was again given $1,600 to purchase crack cocaine. C.I. placed a recorded call to Defendant, and Detective Rickles positively identified Defendant's voice on the other line. C.I. was given the recording device and made his way to the same apartment on East Main Street in Lebanon. Detective Rickles followed C.I. until C.I. turned into the parking lot of the apartment building. Detective Rickles was able to monitor the sale in real time through the recording device as well as a pole camera that gave an aerial view. Portions of the video of the June 9 controlled buy were played for the jury, and Detective Rickles identified Defendant as the subject of another controlled buy with the C.I. C.I. made no stops on the way back to the secure location and returned with approximately one ounce of crack cocaine purchased for $1,600 from Defendant.

LPD Detective Jay Spicer testified that he was primarily assigned to narcotics investigations in May and June of 2016. Detective Spicer testified that Detective Rickles was the "primary case agent" working on the series of controlled buys. Detective Spicer was present for the May 26 and the June 9 controlled buys. On May 26, 2016, Detective Spicer was the security and surveillance officer for the Task Force. Detective Spicer testified that this role included being

> the security of the confidential informant should anything unforeseen happen, as well as surveillance on the target location and assisting, if needed, getting the confidential informant from a secure location to the deal location, and then once the deal is complete, from the deal location back to the secure location.

Detective Spicer agreed that there was not "any sort of problem" in relation to the controlled buy on May 26.

Detective Spicer further testified that he was also present for the June 9, 2016 controlled buy. On this day, Detective Spicer searched C.I.'s vehicle prior to the buy, and Detective Rickles searched C.I.'s person. Detective Spicer testified that he drove himself and Detective Rickles, following C.I. to the location of the controlled buy. Detective Spicer was able to hear the interaction between C.I. and Defendant in real time through the use of the recording device. After the transaction was complete, Detectives Spicer and

Rickles followed C.I. back to the secure location. C.I. made no stops along the way and met with no other people. Detective Spicer searched C.I.'s vehicle after the narcotics that C.I. purchased were removed from the vehicle and did not find any money or additional drugs in the vehicle.

LPD Detective Kenneth Powers testified that he was working as a narcotics detective during the time the controlled buys occurred in 2016. Detective Powers also worked for the Drug Enforcement Administration ("DEA") in his role as a Task Force officer during this time. Detective Powers was present for the May 26 controlled buy, with Defendant as the target. On that day, Detective Powers' role was to search C.I.'s vehicle before the controlled buy, conduct surveillance during the buy, and search C.I.'s vehicle after the buy. He found no money and no drugs in C.I.'s vehicle prior to the buy that day. Detective Powers followed C.I. to the location of the controlled buy. C.I. made no stops on the way there. Detective Powers testified that he then "utilize[d] a tablet or even [his] cell phone and . . . watch[ed] the pole camera from [his] phone in live time[.]" He explained that the pole camera was pointed in the direction of the apartment complex where they were conducting the controlled buys. Detective Powers also had access to the live audio transmitted from C.I.'s recording device.

On June 9, 2016, Detective Powers initiated "pre[-]buy surveillance" on Defendant. Detective Powers and other DEA agents set up surveillance around Defendant's residence and waited for controlled calls to be placed by C.I. After the deal was set up, Detective Powers followed Defendant from his residence to the apartment on East Main Street in Lebanon. Detective Powers was not involved in searching C.I.'s vehicle for this buy, only the "pre[-]buy surveillance." At trial, Detective Powers identified Defendant as the man who sold C.I. crack cocaine on May 26, 2016, and June 9, 2016.

On June 23, 2016, multiple officers with the LPD approached and detained Defendant at a gas station off Highway 109 in Wilson County. Defendant was read *Miranda* warnings. Detective Rickles testified that, after being Mirandized, Defendant "admitted he'd been selling drugs for a while[.]"

The crack cocaine purchased by C.I. on both occasions field-tested positive for cocaine and was then weighed at Detective Rickles' office. The drugs were later sent to the Tennessee Bureau of Investigation ("TBI") Crime Lab. TBI Agents Laura Leigh Cole and Ella Carpenter testified that the substances C.I. acquired from Defendant on May 26, 2016, and June 9, 2016, tested positive for cocaine.

Detective Rickles testified that the controlled buys took place within 1,000 feet of Little Shepherd's Child Care ("Little Shepherd"),[3] which was located on McGregor Street in Lebanon. Detective Rickles testified that he used the Tennessee online database "where you can put a specific address in and it will tell if it's in violation of a school zone[.]" Detective Rickles input the address for the apartment and the address of Little Shepherd and took a "snip shot" of a map from the online database.[4] He explained that the apartment address, referred to as the "submitted address," was denoted by a small black box on the snip shot and that there were two red circles shown on the snip shot, both of which encompassed the black box, meaning the apartment was "within 1,000 feet of a school zone where the submitted address was put in at." One red circle on the snip shot was for Little Shepherd, and the other was for Moss Learning Academy. Detective Rickles explained that Moss Learning Academy "was no longer there" at the time of the controlled buys. After explaining that he sought an indictment only based upon the location of Little Shepherd, Detective Rickles agreed that both Moss Learning Center and Little Shepherd "would be day cares in essence" and "child care agencies." The snip shot was entered as Exhibit 27 without an objection.

On cross-examination, Detective Rickles reviewed three documents from "Google Maps" presented by Defendant. The maps showed driving directions from Little Shepherd to the apartment on East Main Street and listed the distance as 0.2 miles, or 1,056 feet. Defense counsel asked Detective Rickles if the "Google Maps" driving directions would "support or deny [the] allegation that these buys occurred within 1,000 feet of a school zone[.]" Detective Rickles responded by saying "these are driving directions" and that the distance between the buy and the protected location was measured "as a crow flies, not [by] driving distance."

The jury convicted Defendant of two counts of selling 0.5 grams or more of cocaine "within 1,000 feet of a school zone." Following a sentencing hearing, the trial court sentenced Defendant as a Range III persistent offender to a total effective sentence of forty-seven years, ordered Defendant to serve the twenty-year minimum sentence on each count, and imposed a fine of $2,000 on each count. Defendant filed a timely motion for new trial, which the trial court denied following a hearing. Defendant now timely appeals.

---

[3] In the trial transcript, this property is referred to as Little Shepherd Child Care, Little Shepherd's Child Care, and Little Shepherd Day Care. We will refer to that property as "Little Shepherd."

[4] A snip shot is made by using the snipping tool on Windows to take a snapshop of all or part of the words and images on a PC screen.

**Analysis**

On appeal, Defendant argues that the evidence was insufficient to sustain his convictions. He contends that the snip shot introduced into evidence at trial was insufficient to prove beyond a reasonable doubt that Defendant sold drugs within a drug-free zone. Defendant also argues that the trial court erred in allowing the snip shot into evidence without weighing it under Tennessee Rule of Evidence 403.

The State responds that sufficient proof was introduced at trial from which a reasonable jury could conclude beyond a reasonable doubt that Defendant sold cocaine within 1,000 feet of a childcare center on May 26 and June 9, 2016. The State asserts that the snip shot was properly admitted at trial.

We determine that the evidence was sufficient to convict Defendant of two counts of knowingly selling one half (0.5) grams or more cocaine and affirm the convictions in Counts 1 and 3. We determine that the evidence was insufficient to show that the controlled buys occurred in a drug-free zone and vacate the portion of the sentence requiring Defendant to serve the minimum twenty-year sentence on each count. We determine that Defendant waived appellate review concerning the introduction of the snip shot by failing to contemporaneously object.

I. Sufficiency

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (Emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

### Class B Felony Sale of Cocaine

"It is an offense for a defendant to knowingly . . . [s]ell a controlled substance[.]" Tenn. Code Ann. § 39-17-417(a)(3) (2016). Cocaine is classified as a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(a), (b)(4) (2016). Sale of cocaine is a "Class B felony if the amount involved is point five (0.5) grams or more." Tenn. Code Ann. § 39-17-417(c)(1) (2016). A Range III sentence for a Class B felony is punished "not less than twenty (20) nor more than thirty (30) years." Tenn. Code Ann. § 40-35-112(c)(2) (2016).

### Purpose of the Drug-Free School Zone Act

The purpose of the Drug-Free School Zone Act ("the Act") is to provide an environment in which "vulnerable persons . . . can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities." Tenn. Code Ann. § 39-17-432(a) (2016). The Act "does not itself criminalize manufacturing, delivering, selling, or possessing a controlled substance." *State v. Smith*, 48 S.W.3d 159, 167-68 (Tenn. Crim. App. 2000). The Act only imposes harsher penalties for certain drug offenses committed in drug-free zones.

### Tennessee Code Annotated section 39-17-432(b)-Enhanced Sentence

At the time of the controlled buys, Tennessee Code Annotated section 39-17-432(b) provided:

(b)(1) A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000′) of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, *child care agency*, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

(2) In addition to any other penalty imposed by this section, a person convicted of violating this subsection (b) shall also be subject to the following [fines]:

. . . .

(3) A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, *childcare center*, public library,

recreational center or park shall not be subject to additional incarceration as a result of this subsection (b) but shall be subject to the additional fines imposed by this section.

Tenn. Code Ann. § 39-17-432(b) (2016) (Emphasis added).

### *Tennessee Code Annotated section 39-17-432(c)—Mandatory Minimum Sentences*

At that time of the controlled buys, Tennessee Code Annotated section 39-17-432(c) provided:

(c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for *a violation of subsection (b)* shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(c) (2016) (Emphasis added).

### *Ambiguous Language of Section 39-17-432(b)(1) and Section 39-17-432(b)(3)*

With the exception of a child care agency, all of the non-K-12 school properties added for one classification higher punishment in section 39-17-432(b)(1) were specifically excluded from additional incarceration in section 39-17-432(b)(3). It is unclear from the language of the statute whether the legislature intended to exclude a "child care agency" by excluding a "childcare center," or whether the legislature only intended to exclude a childcare center in section -432(b)(3).

"When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use[.]" *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). "When a statute is ambiguous, [courts] may reference the broader statutory scheme, the history of the legislation, or other sources" to determine the statute's meaning. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). We determine that Tennessee Code Annotated section 39-17-432(b) is ambiguous.

### *Legislative History of Section 39-17-432(b)*

When the Drug-Free School Zone Act was enacted in 1995, the one (1) classification higher sentence enhancement provision of section 39-17-432(b) and mandatory minimum sentences provision of section 39-17-432(c) were mandated for

certain drug offenses that occurred "on the grounds or facilities of any school or within one thousand feet (1,000′) of the real property that comprises a public or private elementary school, middle school or secondary school ('K-12 school properties')." See 1995 Tennessee Laws Pub. Ch. 515 (H.B. 298), Tenn. Code Ann. § 39-17-432(b) (1995).

In 2005, House Bill 291 and Senate Bill 258 were filed to amend Tennessee Code Annotated section 39-17-432(b) by creating drug-free zones around preschools, *daycare centers*, public libraries, recreational centers, and parks ("non-K-12 properties") and making certain drug offenses that occurred within 1,000 feet of the real property that comprises a non-K-12 property subject to the one classification higher sentence enhancement. 2005 Tennessee Laws Pub. Ch. 295 (H.B. 291, S.B. 258) (Emphasis added). Amendment 1, which sought to amend S.B. 258 "by deleting the language 'daycare center' and substituting instead the language 'child care agency,'" was filed in the Senate. 2005 Tennessee Laws Pub. Ch. 295 (S.B. 258, S.A.0060). During the March 8, 2005 Senate Judiciary Committee meeting on Amendment 1, the sponsor of S.B. 258 stated that he "had been advised by the Department of Human Services [that S.B. 258] needs to say *child care agency rather than daycare center*." (Emphasis added).

Two amendments to H.B. 291 were then filed in the House and adopted by the House Judiciary Committee on April 5, 2005. 2005 Tennessee Laws Pub. Ch. 295 (H.B. 291, H.A.0251, H.A.0252). Amendment 1 to H.B. 291 was identical to Amendment 1 passed by the Senate Judiciary Committee. Amendment 2 increased fines for the various felony grades of drug offenses. The sponsor of Amendment 2 explained that the additional fines would help offset the fiscal note that would result from the increased incarceration caused by the bill's addition of "a preschool, child care agency, public library, recreational center or park" for one classification higher punishment. During discussion of Amendment 2, members of the committee noted that, even with the additional fines, H.B. 291 faced significant hurdles in the House Finance, Ways and Means Committee, because such fines were rarely fully collected.

After Amendments 1 and 2 were adopted in the House Judiciary Committee, the bill was sent to the House Finance Ways and Means Committee. Amendment 3 to H.B. 291 (House Budget Subcommittee Amendment 1) was adopted by the Budget Subcommittee and placed on the May 3, 2005 calendar of the House Finance, Ways and Means Committee. 2005 Tennessee Laws Pub. Ch. 295 (H.B. 291, H.A.0511). Amendment 3 stated:

> A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, *childcare center*, public library, recreational center or park shall not be subject to additional incarceration as a result of

this subsection (b) but shall be subject to the additional fines imposed by this section. (Emphasis added).

At the May 3, 2005 committee meeting, the Vice Chairman of the House Finance, Ways and Means Committee explained that Amendment 3 "basically deleted provisions for additional incarceration thus taking care of the fiscal impact." Amendment 3 was adopted by the committee, and the amended bill sent to the House.

On May 9, 2005 the House adopted the three amendments and passed H.B. 291, as amended. The Senate passed substituted H.B. 291 on May 19, 2005. Public Chapter 295 (H.B. 291) became effective on July 1, 2005. *See* 2005 Tennessee Laws Pub. Ch. 295 (H.B. 291). "Child care agency" was substituted for "daycare center" in the provision was codified at Tennessee Code Annotated section 39-17-432(b)(1). Amendments 2 and 3 were codified at Tennessee Code Annotated section 39-17-432(b)(2), and (3) respectively.

### *Child Care Agencies and Childcare Centers*

The Act does not define "child care agency" or "childcare center." Generally, the words or terms "contained in a statute must be given their ordinary and common meaning" if such a meaning exist. *State v. We*lch, 595 S.W.3d 615, 623 (Tenn. 2020). We determine that "child care agency" and "childcare center" as used in the Act are terms of art that have a specialized meaning rather than an ordinary or common meaning. "When the legislature does not provide a specific definition for a statutory term, this court may look to other sources . . . for guidance." *State v. Jason Kane Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at *6 (Tenn. Crim. App. Oct. 23, 2018) *perm. app. denied* (Tenn. Mar. 26, 2020) (citing *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007)).

The Tennessee Department of Human Services is statutorily charged with licensing, approving, and supervising child care agencies. Tenn. Code Ann. § 71-1-105(a)(5)(A); *Katrina Walker v. Tennessee Dep't of Hum. Servs*., No. W2019-01829-COA-R3-CV, 2021 WL 120941, at *1 (Tenn. Ct. App. Jan. 13, 2021) *perm. app. dismissed* (Tenn. Apr. 7, 2012). Title 71, Part 5, Chapter 3 governs the administration of child care agencies. Tennessee Code Annotated section 71-3-501, which provides the definitions for Title 71, Part 5, states that "child care agency"

> means[,] and only where the context requires in any other provision of law, a place or facility, regardless of whether it is currently licensed, that is operated as a family child care home, a group child care home, *a child care center*, or a drop-in center, as those terms are defined in this part, or that

provides child care for five (5) or more children who are not related to the primary caregiver for three (3) or more hours per day[.]

Tenn. Code Ann. § 71-3-501(4) (2016) (Emphasis added). "A 'child care agency' includes places or facilities that operate as a 'child care center.'" *Katrina Walker*, 2021 WL 120941, at *12, n. 2.

We hold that the definition for child care agency as used in Tennessee Code Annotated section 39-17-432(b)(1) is the same as the definition for child care agency in Tennessee Code Annotated section 71-3-501(4). This holding is bolstered by the legislative history of 2005 Tennessee Laws Pub. Ch. 295 and the statement made by the sponsor of S.B. 258 that he "had been advised by the Department of Human Services that [Tennessee Code Annotated section 39-17-432(b)(1)] needed to say child care agency rather than daycare center."

Tennessee Code Annotated section 71-3-501, states that a child care center

means any place or facility operated by any person or entity that provides child care for three (3) or more hours per day for at least thirteen (13) children who are not related to the primary caregiver; provided, that a child care agency shall not be classified as a "child care center" that operates as a "group child care home" and keeps three (3) additional school-age children as permitted in subdivision (10); provided, further, that all children, related or unrelated shall be counted in the adult-to-child supervision ratios and group sizes applicable to child care centers; with the exception, that if the child care center is operated in the occupied residence of the primary caregiver, children nine (9) years of age or older who are related to the primary caregiver will not be counted in determining the adult-to-child supervision ratios or group sizes applicable to child care centers if such children are provided a separate space from that occupied by the child care center.

Tenn. Code Ann. 71-3-501(5) (2016). We hold that the definition for a childcare center as used in Tennessee Code Annotated section 39-17-432(b)(3) is the same as the definition for childcare center in Tennessee Code Annotated section 71-3-501(5).

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Although we have determined that a "childcare center" is different from a "child care agency," we hold,

- 11 -

based on (1) the statement of the Vice Chairman at the May 3, 2005 meeting of the House Finance, Ways and Means Committee and (2) the fact that all non-K-12 school properties except a child care agency were specifically excluded from the one classification enhancement, that the legislature intended to exclude a child care agency from the one classification enhancement. We, therefore, affirm the trial court's sentencing decision that the controlled buys were not subject to the one classification enhancement.

### *Tennessee Code Annotated section 39-17-432(c)—Mandatory Minimum Sentence*

At the time of the controlled buys, Tennessee Code Annotated sections 39-17-432(c) provided:

> (c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for *a violation of subsection (b)* shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(c) (2016) (Emphasis added).

For all intents and purposes, Tennessee Code Annotated section 39-17-432(c) has remained unchanged since the Act first became law in 1995. Before the 2005 amendment, a "violation of subsection (b)" was limited to violations within the protected zone of a K-12 school. The 2005 amendment made a violation that occurred "within the prohibited zone of a preschool, *childcare center*, public library, recreational center or park," subject to the additional fines imposed by subsection 39-17-432(b)(2). Tenn. Code Ann. § 39-17-432(b)(3) (Emphasis added). Fines are a type of alternative sentence. Tenn. Code Ann. § 40-35-104(c)(1). Therefore, a defendant who is subject to fines under subsection 39-17-432(b)(2) shall also be required to serve at least the minimum sentence for the defendant's appropriate range of sentence pursuant to section 39-17-432(c).

### *Little Shepherd*

Detective Rickles testified that the controlled buys took place within 1,000 feet of Little Shepherd. No one employed by or connected with Little Shepherd was called by the State as a witness at trial. The prosecution presented no evidence concerning the type of services provided, the number of children for whom care was provided, or the hours of operation. The name "Little Shepherd Child Care" in and of itself did not prove that the business located on McGregor Street in Lebanon was a child care agency or a childcare center. The prosecution could have easily called a witness to establish that Little Shepherd

was a child care agency or a childcare center agency. The prosecution simply did not do so.

We recognize that a prior opinion of this court stated that juries can "use common sense" in evaluating the evidence in "determining whether the buildings identified as an elementary school and a special education school were in fact schools." *State v. Calvin Eugene Bryant, Jr.*, No. M2009-01718-CCA-R3-CD, 2010 WL 4324287, at *13 (Tenn. Crim. App. Nov. 1, 2010), *perm. to appeal denied*, (Tenn. Apr. 13, 2011). Another panel of this court distinguished *Calvin Eugene Bryant, Jr.*, stating:

> However, a jury's ability to use common sense to determine whether buildings identified by a testifying witness as school buildings are in fact schools is quite distinguishable from a situation in which a defendant is questioning whether a city park existed at the time of the crime. Assuming the park existed in April and May 2009, the State easily could have proven that fact.

*State v. Reba Nell Woods*, No. M2012-01922-CCA-R3CD, 2013 WL 6406275, at *15 (Tenn. Crim. App. Dec. 9, 2013).

We have previously stated in this opinion that child care agency and childcare center are terms of art and that the definitions of those terms in Tennessee Code Annotated sections 71-3-501(4) and (5) apply to the terms as used in the Act. We distinguish *Calvin Eugene Bryant, Jr.* on that basis.

The fact that the drug offense occurred within the drug-free zone must be proven beyond a reasonable doubt to the jury. *State v. Rashan Lateef Jordan*, No. E2018-00471-CCA-R3-CD, 2020 WL 360518, at *7 (Tenn. Crim. App. Jan. 21, 2020), *perm. app. denied* (June 3, 2020); *see Blakely v. Washington*, 542 U.S. 296, 301 (2004) (stating that proof of any fact used to enhance a sentence, other than a prior conviction, must be proven to the jury beyond a reasonable doubt). The State failed to prove that Little Shepherd was a child care agency or a childcare center and, therefore, failed to prove that the controlled buys occurred within 1,000 feet of the real property that comprises a child care agency or a childcare center. As a result, the State failed to prove that Defendant was sentenced for a violation of Tennessee Code Annotated section 39-17-432(b). The trial court erred in sentencing Defendant to serve "at least the minimum sentence for [D]efendant's appropriate range of sentence." Tenn. Code Ann. § 39-17-432(c) (2016). We vacate the trial court's order requiring Defendant to serve the minimum sentence for a Range III persistent offender convicted of a Class B felony.

## 2. Admission of Snip Shot as Evidence

Defendant alleges in his brief that the snip shot was improperly admitted as evidence and that "the jury was unfairly prejudiced [by its admission] resulting in his convictions." Defendant did not raise an objection to its admissibility of the snip shot, even when asked by the trial court if there was an objection. We, therefore, determine this issue is waived. *See* Tenn. R. App. P. 36(a); *Gilley*, 297 S.W.3d at 762 ("The failure to make a contemporaneous objection constitutes waiver of the issue on appeal."). However, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). We decline plain error review because it is not required to do substantial justice.

However, to be clear, our decision to decline plain error review should in no way be construed as approval of the way the prosecution sought to prove that the controlled buys occurred within a drug-free zone in this case. The snip shot from the TBI online database was hearsay. Tennessee Rule of Evidence 803(8) provides a hearsay exception for public records and reports "[u]nless the source of information or the method or circumstances of preparation indicate lack of trustworthiness[.]" Tenn. R. Evid. 803(8).

The snip shot, entered as Exhibit 27, shows the "online database" web address as "https://tbidrugfreezones.tbi.tn.gov/tbi_drugfreezones/." When one goes to that web address, the following disclaimer immediately pops up:

> The Tennessee Bureau of Investigation (herein "TBI") makes no representation or warranty as to the accuracy of this map and the information contained within nor to its fitness for a particular purpose or use. The purchaser or user accepts this map on an "AS IS" basis and assumes all responsibilities for the use thereof. The user will assume the entire risk and agrees to hold the TBI and its staff harmless of any liability resulting from any direct, indirect, incidental, special, consequential, or other damages, including loss of profit, arising out of the use of this map. The user is responsible for independent verification of all information contained on this map.

A similar disclaimer for the State of Tennessee also pops up immediately below the TBI disclaimer. These disclaimers certainly impact the use of TBI database maps as evidence without testimony by someone who has knowledge of the accuracy of a particular map or someone who can corroborate the accuracy of the maps based on first-hand knowledge or independent measurements.

## Conclusion

For the foregoing reasons, we affirm the judgments of conviction for Counts 1 and 3, modify the sentences for Counts 1 and 3, and remand for entry of new judgments showing the conviction offense as "39-17-417 – S[ale] of Schedule II, Cocaine" and with the box for "Drug Free Zone" under release eligibility not checked.

_____
ROBERT L. HOLLOWAY, JR., JUDGE